UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MT. HAWLEY INSURANCE COMPANY,
an Illinois Corporation,

    Petitioner,                                  CASE NO.:   1:18cv21013

vs.

ARTHUR DEAKIN, an individual, 1220 MANAGEMENT GROUP, LLC d/b/a BODEGA TAQUERIA Y TEQUILA, a Florida Limited Liability Company; VISION HOSPITALITY SERVICES, INC., a Florida Corporation, JOHN DOES 1-4, individuals,

    Respondents.
_____/

**PETITIONER, MT. HAWLEY INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW the Petitioner, MT. HAWLEY INSURANCE COMPANY ("MT. HAWLEY"), by and through its undersigned counsel, and files this Complaint for Declaratory Judgment against Respondents, ARTHUR DEAKIN, an individual ("DEAKIN"), 1220 MANAGEMENT GROUP, LLC d/b/a BODEGA TAQUERIA Y TEQUILA, a Florida Profit Corporation ("BODEGA"), VISION HOSPITALITY SERVICES, INC., a Florida Profit Corporation ("VISION"), and John Does 1-4, individuals ("JOHN DOES 1-4"), and in support thereof, states as follows:

**NATURE OF THE ACTION**

1. This is an action for Declaratory Judgment to determine MT. HAWLEY's obligations under an insurance policy issued to VISION with regards to an incident which occurred on November 26, 2016, at the business premises of BODEGA, located at 1221 16th Street, Miami Beach, Florida 33139 (the "Club").

1

2. This action for Declaratory Judgment is brought pursuant to 28 U.S.C. § 2201 *et seq.*, for the purpose of determining a question in actual controversy between the parties as described in detail herein.

## JURISDICTION, VENUE AND PARTIES

3. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy, exclusive of interest and cost, is believed to be in excess of $75,000.00.

4. Venue for this matter exists under 28 U.S.C. § 1391(a), as all Respondents reside in the district or maintain offices in the district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

5. At all times material hereto, Petitioner, MT. HAWLEY, was and is an Illinois Corporation with a principal place of business in Peoria, Illinois, and was authorized under the laws of the State of Florida to conduct business as a foreign corporation issuing policies of surplus lines insurance for delivery to policyholders within Florida.

6. At all time material hereto, Respondent, DEAKIN, was and is a resident of Miami-Dade County, Florida, maintained his permanent home address in Miami-Dade County and otherwise *sui juris*. DEAKIN is a Citizen of the State of Florida.

7. At all time material hereto, Respondent, BODEGA, was a Florida Limited Liability Company authorized to conduct business in the State of Florida with its principal place of business located at 1221 16th Street, Miami Beach, Florida 33139.

8. At all times material hereto, JUSTIN LEVINE was and is listed as a member of BODEGA under its Article of Organization for Florida Limited Liability Company, filed with the Florida Secretary of State on January 23, 2014.

9. At all times material hereto, JUSTIN LEVINE, was and is a resident of Miami-Dade County, Florida, maintained his permanent home address in Miami-Dade County and otherwise *sui juris*. JUSTIN LEVINE is a Citizen of the State of Florida.

10. At all times material hereto, KEVIN MENIN was and is listed as a member of BODEGA under its Article of Organization for Florida Limited Liability Company, filed with the Florida Secretary of State on January 23, 2014.

11. At all times material hereto, KEVIN MENIN, was and is a resident of Miami-Dade County, Florida, maintained his permanent home address in Miami-Dade County and otherwise *sui juris*. KEVIN MENIN is a Citizen of the State of Florida.

12. At all time material hereto, Respondent, VISION, was a Florida Corporation authorized to conduct business in the State of Florida with its principal place of business located at 6147-6151 Washington Street, Hollywood, FL 33023. VISION is a Citizen of the State of Florida and domiciled in the State of Florida.

13. At all time material hereto, Respondents, JOHN DOES 1-4, are reasonably believed to be residents of Miami-Dade County, Florida, who maintained their permanent home address in Miami-Dade County and otherwise *sui juris*. JOHN DOES 1-4, are reasonably believed to be Citizens of the State of Florida.

14. Petitioner is an entity domiciled in a different state from all the Respondents, and thus, there is complete diversity between Petitioner and Respondents.

15. The amount in controversy, exclusive of interest or costs, is believed to meet or exceed the jurisdictional requirements for diversity jurisdiction.

16. Accordingly, there is original jurisdiction in this Court and Petitioner respectfully requests this action proceed, pursuant to 28 U.S.C. Section 1332, *et. seq.*

## BACKGROUND AND GENERAL ALLEGATIONS

17. MT. HAWLEY files this action for declaratory judgment with respect to the claim submitted by VISION for coverage and/or indemnification for the allegations raised against it by DEAKIN, in the litigation styled, *Arthur Deakin v. 1220 Management Group, LLC, et al.*, Case No. 2017-007892-CA-31, which was filed and is presently pending in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "Underlying Action"). A copy of the Amended Complaint filed in the Underlying Action is attached hereto as ***Exhibit "A."***

18. VISION has sought coverage for the battery and negligence claims raised by DEAKIN in the Underlying Action pursuant to a Commercial General Liability Insurance Policy, bearing Policy Number PGA0002171, issued by MT. HAWLEY to VISION, with an effective policy period of March 19, 2016 through March 19, 2017 (the "Policy"). The Policy provides limits of liability of $1 million per occurrence and $2 million in the general aggregate. A true and correct copy of the Policy is attached and incorporated hereto as ***Exhibit "B."***

19. According to the Amended Complaint, Bodega operated the Club at 1221 16th Street, Miami Beach, Florida 33139. *See Ex. A* at ¶ 8.

20. The Amended Complaint further alleges that "Bodega employs/engages bouncers/security personnel for the Club" and "Vision provided bouncers/security personnel for Bodega." *See Ex. A* at ¶ 9.

21. Upon information and belief, BODEGA operates as a bar, tavern, lounge and/or nightclub.

22. BODEGA and VISION entered into a written agreement, dated May 8, 2015, whereby VISION was to furnish security services to BODEGA by way of security agents and

security management (the "Security Contract"). A true and correct copy of the Security Contract is attached hereto as **Exhibit "C."**

23. According to the Security Contract, VISION was to provide the agreed upon services for one (1) year, commencing May 14, 2015, and which would automatically renew after one (1) year, unless a thirty (30) days notice was provided with proper cause. *See Exhibit "C."*

24. Upon information and belief, the Security Contract, automatically renewed after one (1) year of commencement.

25. According to the Amended Complaint, on November 26, 2016, DEAKIN was a patron and business invitee at the Club, when JOHN DOES 1-4, the bouncers/security personnel working for BODEGA and VISION, attacked DEAKIN without provocation, causing him to suffer "significant physical injury, including a fractured nose." *See Ex. A at ¶¶ 11-14.*

26. The Amended Complaint alleges that "Bodega and Vision are directly and vicariously liable for the wrongful conduct of John Does 1-4." *See Ex. A at ¶ 15.*

27. Count II of the Amended Complaint for Battery against JOHN DOES 1-4 and VISION alleges as follows:

**COUNT II - BATTERY**
**(AS TO JOHN DOES 1-4 AND VISION)**

\* \* \*

20. On November 26, 2016, Vision, through its employees, agents and/or representatives, John Does 1-4, engaged in an act of battery against Deakin by intentionally causing unpermitted harmful and offensive contact with Deakin.

21. The above-described acts of John Does 1-4 and Vision were willful, wanton and malicious.

22. At no time did Deakin legally consent to the harmful and offensive contact.

23. As a direct and proximate result of the foregoing conduct, Deakin was caused to suffer significant bodily injury and resulting pain and

suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the cost of medical and nursing care and treatment. These damages are either permanent or continuing in nature, and Deakin will continue to suffer these losses in the future.

WHEREFORE, Deakin demands judgment against John Does 1-4 and Vision for compensatory damages, plus costs, interest, and for such further relief as this Court deems just and proper.

\* \* \*

*See Ex "A"* at Count II.

28. Count IV of the Amended Complaint for Negligence against VISION alleges as follows:

### COUNT IV – NEGLIGENCE
### (AS TO VISION)

\* \* \*

29. Prior to November 26, 2016, Vision hired, engaged, retained, and supervised John Does 1-4 and other bouncers/security personnel for the Club.

30. At all relevant times, Vision owed third parties such as Deakin a duty to make an appropriate investigation of John Does 1-4 and its other bouncers/security personnel.

31. At all relevant times, Vision owed a duty to third parties such as Deakin, to ensure that Vision's employees, independent contractors, agents and representatives, such as John Does 1-4, were properly instructed, trained and supervised, and that they act in a fair, reasonable and non-violent manner towards patrons such as Deakin, so as to not cause harm to, or otherwise injure patrons such as Deakin.

32. Vision breached the above-referenced duties by, but not limited to:

   a. Failing to conduct a full and proper investigation of its bouncers/security personnel, including John Does 1-4 prior to their hiring;

   b. Failing to conduct regular and/or routine inspections, investigations or inquiries to determine whether or not John Does 1-4 and other bouncers/security personnel should be retained based upon what those inspections, investigations or inquiries would have revealed;

   c. Failing to properly train, supervise and/or educate John Does 1-4 and other bouncers/personnel on the use of force, violence and physical altercations with Bodega's patrons, such as Deakin;

   d. Failing to obtain appropriate background checks to insure that Vision's employees, independent contractors, agents and

6

> representatives, such as John Does 1-4, did not have a history of violent behavior;
>
> e. Failing to select employees, independent contractors, agents and representative who would resort to peaceful means of resolving disputes;
>
> f. Failing to train the bouncers/security personnel to resolve disputes with customers without resorting to violence;
>
> g. Failing to train the bouncers/security personnel to utilize the least force necessary to resolve physical altercations with customers;
>
> h. Failing to supervise its bouncers/security personnel to ensure they used the least force necessary to resolve physical altercations with customers; and
>
> i. Other acts of negligence relating to the hiring, engagement, retention and supervision of John Does 1-4 and other bouncers/security personnel.
>
> 33. As a direct and proximate result of Vision's negligence, Deakin was caused to suffer significant bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the cost of medical and nursing care and treatment. These damages are either permanent or continuing in nature, and Deakin will continue to suffer these losses in the future.
>
> WHEREFORE, Deakin demands judgment against Vision for compensatory damages, plus costs, interest, and for such further relief as this Court deems just and proper.
>
> * * *

*See Ex "A"* at Count IV.

29. VISION contends MT. HAWLEY has a duty to defend and indemnify VISION under the Policy for the claims raised in the Underlying Action.

30. After further investigation of the claims in the Underlying Action and the facts pertaining to the subject November 26, 2016 incident at the Club, MT. HAWLEY contends there is no coverage afforded under the Policy for the allegations and damages asserted against BODEGA, JOHN DOES 1-4 and VISION, including their owners, agents and representatives, in the Underlying Action for the reasons described below.

**COUNT I – RESCISSION**

31. MT. HAWLEY incorporates by reference the allegations contained in Paragraphs 1 through 26 above as if more fully set forth herein at length.

32. This is an action for rescission of the Policy on the basis of misrepresentations, misstatements and/or omissions in an insurance application.

33. Prior to the Policy inception date of March 19, 2016, VISION completed a General Liability Insurance Application for Security Guard and Detective/Private Investigators (the "Application"). A true and correct copy of the Application is attached hereto as ***Exhibit "D."***

34. Paragraph 29 of the Application states, "Please provide percentage breakdown for all security guard and armored car operations below." *See Ex. "D."*

35. In response to Paragraph 29, VISION indicated that "100%" of all security guard operations were for "Hotels/Motels." *See Ex. "D."*

36. Within Paragraph 29, there is a line item for "Bars/Nightclubs/Taverns" in which VISION left blank or otherwise did not specify a percentage of operations.

37. During the course of MT. HAWLEY's investigation into the claims which are the subject of the Underlying Action, MT. HAWLEY learned that VISION provided security services for BODEGA at the Club.

38. It is undisputed that BODEGA is *not* a hotel or motel and that BODEGA is a "Bar/Nightclub/Tavern."

39. The Application was signed by the Chief Executive Officer of VISION, Don Dromerhauser ("DROMERHAUSER"), which contained the following statement:

> Notice to applicants: this application must be completed in full **as the quote above will be based solely on the information provided.** Any person who knowingly and with the intent to defraud any insurance

> company or other person, files an application for insurance containing any false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent act, which is a crime. By signing this application, the signer warrants that to their best knowledge all information given is true and accurate.

*See Ex. "D"* (emphasis added).

40. MT. HAWLEY would not have issued the Policy had DROMERHAUSER accurately and/or truthfully disclosed that VISION would be providing operations for "Bars/Nightclubs/Taverns".

41. The misrepresentation, omission and concealment contained in the Application were material to the acceptance of the risk and to the hazard assumed by MT. HAWLEY.

42. If the true facts had been known to MT. HAWLEY, it would not have issued the Policy, would not have issued it at the same premium rate, would not have issued the policy with the same liability limits, or would not have provided coverage with respect to the incident resulting in the loss.

43. Based upon the Application, and the representations made to MT. HAWLEY as to the nature of VISIONS' operations, which were false and material to the issuance of the Policy, MT. HAWLEY seeks to rescind the Policy.

44. Florida Statute §627.409 provides a misrepresentation, omission, or concealment, may prevent recovery of coverage under a policy if the misrepresentation is material either to the acceptance of the risk or the hazard assumed by the insurer, or if the true facts had been known to the insurer, the insurer in good faith, would not have issued the policy at the same premium rate, or would not have provided coverage with respect to the hazard resulting in the loss.

45. The misrepresentations, misstatements and/or omissions made by DROMERHAUSER on behalf of VISION were material to the underwriting of the risk in that MT. HAWLEY would not have issued the Policy had it known the true facts. Therefore, MT.

9

HAWLEY is entitled to a judgment of rescission of the Policy issued to VISION under applicable law.

46. MT. HAWLEY complied with all conditions precedent and is entitled to bring this action for rescission or they have been waived.

WHEREFORE, MT. HAWLEY INSURANCE COMPANY prays this Honorable Court take jurisdiction of the parties and the subject matter to construe the provisions of the Policy and enter judgment in its favor and:

(1) Find that VISION made misrepresentations, omissions and/or concealments within the Application for insurance with MT. HAWLEY; and

(2) Find that said misrepresentations, omissions and/or concealments were material to the risk insomuch as MT. HAWLEY would not have issued the Policy had the correct and truthful information been disclosed in the insurance application; and

(3) Declare that Florida Statute §627.409 applies to the misrepresentations, omissions and/or concealments made by VISION in the insurance application; and

(4) Declare that MT. HAWLEY is entitled to void the Policy *ab initio* and rescind the Policy from inception; and

(5) Declare, pursuant to the above policy exclusions, that MT. HAWLEY has no duty to defend or indemnify the Respondents for any claims asserted in the Underlying Action; and

(6) Declare DEAKIN, BODEGA, VISION, and JOHN DOES 1-4 are estopped from pursing a claim, defense, and/or indemnity against MT. HAWLEY for any claims arising out of the Underlying Action; and

(7) Declare that pursuant to Florida Statute § 627.426(2), MT. HAWLEY is entitled to reimbursement for all attorneys' fees and costs incurred in its defense of VISION in the Underlying Lawsuit.

(8) MT. HAWLEY respectfully requests such further relief as this Court may deem appropriate, including but not limited to costs incurred in this action.

## COUNT II – DECLARATORY JUDGMENT
## NO INSURANCE COVERAGE

47. MT. HAWLEY hereby incorporates by reference the allegations set forth in paragraphs 1 through 26 above as if fully set forth herein.

48. This is an action seeking declaratory relief pursuant to Fla. Stat. Section 86 to determine and declare the rights and duties of the parties under the Policy issued by MT. HAWLEY as more specifically stated herein.

49. MT. HAWLEY contends there is no coverage afforded for the claims of DEAKIN against BODEGA, VISION, and JOHN DOES 1-4, as the claims are specifically excluded pursuant to the Policy.

50. The Policy contains the following relevant provisions:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** —Who Is An insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** — Definitions.

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1. Insuring Agreement**

        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

***

51. The Policy contains an Endorsement titled "EXCLUSION – SPECIFIC WORK" in Form SGL 312 (10/12) of the Policy (the "Specific Work Exclusion"), which states in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY**

**EXCLUSION – SPECIFIC WORK**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2. Exclusions of COVERAGE B PERSONAL AND ADVERTISING INJURY** (Section I – Coverages)

**Specific Work**

This insurance does not apply to "bodily injury," "property damage" or "personal advertising injury" arising out of the specific work listed in the **Schedule** below, regardless of whether such specific work is conducted by you or on your behalf or whether the specific work is conducted for yourself or for others.

This exclusion also applies even if other causes contribute to or aggravate the "bodily injury," "property damage" or "personal advertising injury."

**SCHEDULE**

**Description Of Specific Work:**

Any and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs.

* * *

*See Ex. "B,"* at Form SGL 312 (10/12).

12

52. Based on the allegations contained in the Amended Complaint in the Underlying Action, DEAKIN suffered, *inter alia*, bodily injury at the Club as a result of tortious conduct committed by JOHN DOES 1-4, who "were acting within the course and scope of their duties for both Bodega and Vision." *See Ex. "A"* at ¶¶ 14-15.

53. For these reasons, MT. HAWLEY asserts that the claims at issue and alleged in the Amended Complaint are specifically excluded from coverage under the Policy because the "bodily injury" to DEAKIN arose out of security services being provided by JOHN DOES 1-4 on behalf of BODEGA and VISION at the Club. These security services at the Club are considered "operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs."

54. Although MT. HAWLEY believes there is no coverage under the Policy as set forth above, MT. HAWLEY is in doubt or is uncertain as to the existence or non-existence of its rights to deny coverage to BODEGA, VISION and JOHN DOES 1-4 under the Policy as set forth above and has an actual, practical and present need for a declaration of rights by the Court.

55. The declaratory relief process sought in this action is not extraordinary and is consistent with the decision of the Supreme Court of the State of Florida in *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5 (2004), in which the Court held declaratory judgment statutes have been construed to authorize an action to declare the underlying issues of fact in determining the existence or nonexistence of any right, or of "any fact upon which the existence or nonexistence of such . . . right does or may depend, and whether such . . . right now exists or will arise in the future." *Higgins v. State Farm,* 894 So. 2d at *13.

56. MT. HAWLEY asks the Court, pursuant to Florida Statute § 86.011, to determine the existence or nonexistence of facts: to wit: whether the claims and the damages sought by

DEAKIN against BODEGA, VISION and JOHN DOES 1-4 are covered pursuant to the terms of the Policy.

57.	MT. HAWLEY has a present bona fide need for a declaration with respect to its rights and obligations under the Policy as to its obligation to defend and potentially indemnify BODEGA, VISION, and/or JOHN DOES 1-4 in the Underlying Action.

58.	The facts necessary for this Honorable Court to render MT. HAWLEY's Declaration of Rights are set forth in this Complaint or are ascertainable by this Court.

59.	MT. HAWLEY's rights under the Policy and Florida law are dependent on this Honorable Court's findings of fact and/or application of applicable statutory and case law.

60.	The Respondents' interest in this Declaration of Rights is actual, present, adverse, and antagonistic in fact and/or in law to MT. HAWLEY's interest.

61.	MT. HAWLEY seeks relief in order to determine and enforce contractual/legal rights under the Policy, not merely to seek legal advice from this Honorable Court.

62.	Without declaratory relief from the court, MT. HAWLEY will be exposed to damages arising from the Underlying Action for which it believes it would not be liable under the Policy.

63.	All conditions precedent to the filing of this Declaratory Judgment Action have been complied with, met, or waived.

WHEREFORE, MT. HAWLEY INSURANCE COMPANY prays this Honorable Court take jurisdiction of the parties and the subject matter to construe the provisions of the Policy and enter judgment in its favor and:

(1) Declare, pursuant to the above policy exclusions, no coverage is afforded under the Policy for the claims of DEAKIN against BODEGA, VISION and JOHN DOES 1-4.

(2) Declare, pursuant to the above policy exclusions, that MT. HAWLEY has no duty to defend or indemnify the Respondents for any claims which have been asserted in the Underlying Action; and

(3) Declare DEAKIN, BODEGA, VISION and JOHN DOES 1-4 are estopped from pursing a claim, defense, and/or indemnity against MT. HAWLEY for any claims arising out of the Underlying Action; and

(4) Declare that pursuant to Florida Statute § 627.426(2), MT. HAWLEY is entitled to reimbursement for all attorneys' fees and costs incurred in its defense of VISION in the Underlying Lawsuit.

MT. HAWLEY respectfully requests such further relief as this Court may deem appropriate, including but not limited to costs incurred in this action.

## COUNT III – DECLARATORY JUDGMENT
## LATE NOTICE

64. MT. HAWLEY hereby incorporates by reference the allegations set forth in paragraphs 1 through 26 above as if fully set forth herein.

65. On December 1, 2017, MT. HAWLEY received notice of the Underlying Action by way of a correspondence from DEAKIN's attorneys in the Underlying Action ("First Notice"). A true and correct copy of the First Notice is attached hereto as **Exhibit "D."**

66. Pursuant to the First Notice, DEAKIN's attorney stated, "I do not know if Vision provided you with a copy of the Amended Complaint filed in this matter. As such, I am enclosing a copy of the Amended Complaint to ensure that you are on notice of this claim." *See Ex. "D."*

67. In fact, this was the first time MT. HAWLEY had received *any* notice of the claims or the lawsuit filed against its named insured, VISION.

15

68. The Policy provides the following post-loss duties and obligations for VISION:

   **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

69. Based on the allegations in the Underlying Action, the incident is alleged to have occurred on November 26, 2016; yet, MT. HAWLEY was not placed on notice of the claims until December 1, 2017.

70. More alarming, MT. HAWLEY's insured, VISION, was *not* the entity to put MT. HAWLEY on notice.

71.     As such, VISION failed to notify MT. HAWLEY as soon as practicable of the "occurrence" which resulted in the subject claims. VISION failed to notify MT. HAWLEY of the Underlying Lawsuit. In addition, VISION failed to immediately send MT. HAWLEY copies of demands, notices, summonses or legal papers received in connection with the claims and Underlying Action.

72.     VISION's failure to comply with its duties and obligations as addressed above substantially prejudiced MT. HAWLEY's ability to investigate the claim, interview potential witnesses, gather documents and potentially settle any covered claims.

WHEREFORE, MT. HAWLEY INSURANCE COMPANY prays this Honorable Court take jurisdiction of the parties and the subject matter to construe the provisions of the Policy and enter judgment in its favor and:

(1) Declare, pursuant to the above policy exclusions, that VISION breached its obligations under the Policy when it failed to provide timely notice of the claims and the Underlying Action; and

(2) Declare MT. HAWLEY was prejudiced by VISION's late notice, or lack thereof, of the claims and Underlying Action; and

(3) Declare that as a result of the late notice,, no coverage is afforded under the Policy for the claims of DEAKIN against BODEGA, VISION and JOHN DOES 1-4.

(4) Declare that as a result of the late notice, MT. HAWLEY has no duty to defend or indemnify VISION, BODEGA, or JOHN DOES 1-4 for any claims which have been asserted in the Underlying Action;

(5) Declare DEAKIN, VISION, BODEGA, and JOHN DOES 1-4 are estopped from pursing a claim, defense, and/or indemnity against MT. HAWLEY for any claims arising out of any allegations in the Amended Complaint; and

(6) Declare that pursuant to Florida Statute § 627.426(2), MT. HAWLEY is entitled to reimbursement for all attorneys' fees and costs incurred in its defense of VISION in the Underlying Lawsuit.

MT. HAWLEY INSURANCE COMPANY respectfully demand a trial by jury on all issues and requests such further relief as this Court may deem appropriate, including but not limited to costs incurred in this action.

Respectfully submitted this 16th day of March, 2018.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C.**

| | | |
|---|---|---|
| By | : | /s/ Michael A. Packer |
| | | Michael A. Packer |
| | | Florida Bar No.: 121479 |
| Primary | : | mapacker@mdwcg.com |
| | | Aaron D. Silvers |
| | | Florida Bar No.: 104811 |
| Primary | : | adsilvers@mdwcg.com |
| | | 100 NE 3rd Avenue, Suite 1100 |
| | | Fort Lauderdale, FL 33301 |
| | | Phone: (954) 847-4920 |
| Secondary | : | rrgomez@mdwcg.com |
| Attorneys for | | *MT. HAWLEY INSURANCE COMPANY* |

LEGAL/115081515.v1