UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MT. HAWLEY INSURANCE COMPANY,
an Illinois Corporation,

    Petitioner,                                            CASE NO.:    1:18-cv-21013-JEM

vs.

ARTHUR DEAKIN, an individual, ELAN AZRAD, an individual, FRANKLIN BALMACEDA, an individual, CHRISTIAN OQUENDO, an individual, CHEBAB OMAR, an individual, SEAN LEE, an individual, JOE CONDE, an individual, ALAN COSTA, an individual, 1220 MANAGEMENT GROUP, LLC d/b/a BODEGA TAQUERIA Y TEQUILA, a Florida Limited Liability Company, VISION HOSPITALITY SERVICES, INC., a Florida Corporation, KMJG HOLDINGS, LLC, a Florida Limited Liability Company, MENIN HOTELS, LLC d/b/a MENIN HOSPITALITY, LLC, a Florida Limited Liability Company,

    Respondents.
_____/

**PETITIONER, MT. HAWLEY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
<u>MEMORANDUM OF LAW</u>**

Petitioner, MT. HAWLEY INSURANCE COMPANY ("MT. HAWLEY"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby files its Motion for Summary Judgment and Incorporated Memorandum of Law and, in support thereof, states as follows:

I.      **BACKGROUND**

This is an action for Declaratory Judgment, pursuant to 28 U.S.C. § 2201 *et seq.*, to determine MT. HAWLEY's obligations under the Commercial General Liability insurance policy issued to VISION HOSPITALITY SERVICES, INC. ("VISION").

Specifically, MT. HAWLEY seeks a declaration from the Court that it does not owe a duty to defend or indemnify VISION and its employees for the claims brought by: (1) Respondent, Arthur Deakin ("DEAKIN") in the litigation styled, *Arthur Deakin v. 1220 Management Group, LLC, et al.*, Case No. 2017-007892-CA-31 (the "Deakin Action"); and (2) Respondent, Elan Azrad ("AZRAD") in the litigation styled, *Elan Azrad v. KMJG Holdings, LLC, et al.*, Case No. 2017-009586-CA-01 (the "Azrad Action") due to the fact that in both instances, the claims and lawsuits arise out of specifically excluded work.

Additionally, MT. HAWLEY seeks an order from this Court, which rescinds and voids the subject insurance policy *ab initio* based on material misrepresentations made by VISION in its application for insurance with MT. HAWLEY. Specifically, VISION, a security company, represented in its insurance application that 100% of its security services were provided to hotels and motels and it did not provide services to bars, taverns, nightclubs, etc. Meanwhile, the subject incidents that give rise to both the Deakin Action and the Azrad Action are alleged to have occurred while VISION was providing security services to a bar/nightclub.

MT. HAWLEY brings this Motion for Summary Judgment the "Motion") because the record evidence demonstrates there is no genuine dispute of material fact that: (1) MT. HAWLEY has no duty to defend or indemnify VISION and its employees for any claims in the Deakin Action and Azrad Action; and (2) that VISION made material misrepresentations in its

2

application for insurance, which MT. HAWLEY detrimentally relied upon in issuing the subject policy. Therefore, MT. HAWLEY is entitled to summary judgment as a matter of law.

## II. UNDISPUTED FACTS

1. MT. HAWLEY issued a Commercial General Liability Insurance Policy, bearing Policy Number PGA0002171 to VISION, with an effective policy period of March 19, 2016 through March 19, 2017 (the "Policy"). A certified copy of the Policy is attached as ***Exhibit "A."***

2. Respondents, 1220 MANAGEMENT GROUP, LLC d/b/a BODEGA TAQUERIA Y TEQUILA ("BODEGA"), and VISION entered into a written agreement, dated May 8, 2015, whereby VISION agreed to furnish security services to BODEGA at 1221 16th Street, Miami Beach, Florida 33139 by way of security agents and security management (the "Security Contract"). A true and correct copy of the Security Contract is attached as ***Exhibit "B."***

3. According to the Security Contract, VISION was to provide the agreed upon services for one (1) year, commencing May 14, 2015, and which would automatically renew after one (1) year, unless a thirty (30) day notice was provided with proper cause. *See Ex. B.*

4. The Security Contract was in effect at all times material hereto.

5. According to the Deakin Action, Bodega operated the "Club" at 1221 16th Street, Miami Beach, Florida 33139 (the "Club"). A true and correct copy of the Second Amended Complaint filed in the Deakin Action ("Deakin SAC") is attached as ***Exhibit "C"*** at ¶ 12.

6. The Deakin Action further alleges, "Bodega employs/engages bouncers/security personnel for the Club" and "Vision provided bouncers/security personnel for Bodega." *See Ex. C* at ¶¶ 13-14.

3

7. According to the Deakin SAC, on November 26, 2016, DEAKIN was a patron and business invitee at the Club, when Respondents, CHRISTIAN OQUENDO, CHEBAB OMAR, SEAN LEE, JOE CONDE, and ALAN COSTA, the bouncers/security personnel working for BODEGA and VISION (collectively the "Security Guards"), attacked DEAKIN without provocation, causing him to suffer "significant physical injury, including a fractured nose." *See Ex. C* at ¶¶ 15-19.

8. According to the Second Amended Complaint filed in the Azrad Action ("Azrad SAC"), VISION contracted with Respondents, KMJG HOLDINGS, LLC ("KMJG") and/or MENIN HOTELS LLC d/b/a MENIN HOSPITALITY, LLC ("MENIN") and/or BODEGA to provide security services for the Club. A true and correct copy of the Azrad SAC is attached as ***Exhibit "D"*** at ¶ 7.

9. The Azrad Action alleges, the "incident giving rise to this claim occurred at a bar/nightclub know as BODEGA TAQUERIA Y TEQUILA." *See Ex. D* at ¶ 3.

10. The Azrad Action alleges, "FRANKLIN BALMACEDA was a bouncer/security person at [the Club]," who at all times material to the Azrad Action was "acting within the course and scope of his agency or employment with [MENIN] and/or [KMJG] and/or [BODEGA] and/or [VISION]." *See Ex. D* at ¶¶ 9-10.

11. It is further alleged, on or about the early morning hours of November 22, 2016, AZRAD was a lawful business invitee at BODEGA, when "Nightclub personnel escorted [AZRAD] and his party outside the nightclub. At that point, an altercation ensued which involved [ ] BALMACEDA slamming [AZRAD] into the pavement outside." *See Ex. D* at ¶¶ 11, 13.

12. The Policy contains the following relevant provisions:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

4

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section **II** —Who Is An insured.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** — Definitions.
>
> **SECTION I - COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> > a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> ***

*See Ex. A* at Form CG 00 01 04 13, p. 1 of 17.

> **SECTION II – WHO IS AN INSURED**
>
> **1.** If you are designated in the Declarations as:
>
> ***
>
> > d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
>
> ***
>
> **2.** Each of the following is also an insured;
>
> > a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

5

*Id.* at pg. 13 of 17.

13. The Policy also contains an Endorsement titled "EXCLUSION – SPECIFIC WORK" in Form SGL 312 (10/12) of the Policy (the "Specific Work Exclusion"), which states in pertinent part:

> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY**
>
> **EXCLUSION – SPECIFIC WORK**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> The following exclusion is added to Paragraph **2. Exclusions** of **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2. Exclusions of COVERAGE B PERSONAL AND ADVERTISING INJURY** (Section I – Coverages)
>
> **Specific Work**
>
> This insurance does not apply to "bodily injury," "property damage" or "personal advertising injury" arising out of the specific work listed in the **Schedule** below, regardless of whether such specific work is conducted by you or on your behalf or whether the specific work is conducted for yourself or for others.
>
> This exclusion also applies even if other causes contribute to or aggravate the "bodily injury," "property damage" or "personal advertising injury."
>
> **SCHEDULE**
>
> **Description Of Specific Work:**
>
> Any and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs.
>
> \* \* \*

*See Ex. A* at Form SGL 312 (10/12).

14. Prior to the Policy inception date of March 19, 2016, VISION completed a General Liability Insurance Application for Security Guard and Detective/Private Investigators (the "Application"). A true and correct copy of the Application is attached as ***Exhibit "E."***

15. Paragraph 29 of the Application states, "Please provide percentage breakdown for all security guard and armored car operations below." *See Ex. E.*

6

16. In response to Paragraph 29, VISION indicated that "100%" of all security guard operations were for "Hotels/Motels." *See Ex. E.*

17. Within Paragraph 29, there is a line item for "Bars/Nightclubs/Taverns" that VISION left blank. *See Ex. E.*

18. It is undisputed that BODEGA is *not* a hotel or motel and that BODEGA is a "Bar/Nightclub/Tavern."

19. MT. HAWLEY would not have issued the Policy, would not have issued it at the same premium rate, or would not have issued the policy with the same liability limits had VISION accurately and/or truthfully disclosed that VISION would be providing operations for "Bars/Nightclubs/Taverns." See Affidavit of Jessica Dixon, attached as **Exhibit "F".**

### III. MEMORANDUM OF LAW

#### A. Motion for Summary Judgment Standard

A summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)(internal citations omitted). "In determining whether summary judgment is proper, a court ordinarily must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party." *Id.*

#### B. The Duty to Defend.

The duty to defend under Florida law is based on the "eight corners rule" – the four corners of the applicable insurance policy and the four corners of the underlying complaint. *See*

7

*Addison Ins. Co. v. 4000 Island Blvd. Condo. Ass'n, Inc.*, 2017 WL 6616690, *6 (11th Cir. 2017).

In *Mt. Hawley Ins. Co. v. Miami River Port Terminal*, this Court addressed an insurance carrier's duty to defend and said:

> Whether an insurer has a duty to defend "is determined by examining the allegations in the complaint filed against the insured." *Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1983) (citing *Nat'l Union Fire Ins. Co. v. Lenox Liquors Inc.*, 358 So. 2d 533, 536 (Fla. 1978)). **"To determine whether [the insurer] ha[s] a duty to defend [the insured], the Court looks only to the allegations in the Underlying Complaint and the terms of the Policy."** *Evanston Ins. Co. v. Haven S. Beach, LLC*, 152 F. Supp. 3d 1370, 1374 (S.D. Fla. 2015) (emphasis added). If the Underlying Complaint "alleges facts that fairly and potentially bring the suit within policy coverage," the insurer has a duty to defend its insured. *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-43 (Fla. 2005) (citations and internal punctuation omitted). By contrast, "**[w]here the allegations in the complaint show that no coverage exists or a policy exclusion applies, no duty to defend arises.**" *James River Ins. Co. v. Bodywell Nutrition, LLC*, 842 F. Supp. 2d 1351, 1354 (S.D. Fla. 2012) (citing *Posigian v. Am. Reliance Ins. Co. of N.J.*, 549 So. 2d 751, 753 (Fla. 3d DCA 1989)). "The allegations of the complaint govern the duty to defend even if they may be factually incorrect or without merit," *Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co.*, 696 So. 2d 907, 910 (Fla. 3d DCA 1997), but if those allegations leave any doubt as to the duty to defend, the question must be resolved in favor of the insured, *Trizec Props. Inc. v. Biltmore Const. Co.*, 767 F.2d 810, 811-12 (11th Cir. 1985).

*Mt. Hawley Ins. Co. v. Miami River Port Terminal*, 228 F. Supp. 3d 1313, 1321-1322 (S.D. Fla. January 6, 2017)(emphasis added).

As such, in determining whether MT. HAWLEY has a duty to defend VISION and its employees in the Deakin Action and Azrad Action, this Court should consider the complaints filed in the Deakin Action and Azrad Action in conjunction with the Policy.

8

C. **MT. HAWLEY has no duty to defend or indemnify VISION or its employees in the Deakin Action and Azrad Action because the Policy does not apply to bodily injury arising out of any and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs.**

As stated above, the duty to defend is based on the "eight corners rule," which refers to the four corners of the underlying complaint(s) and the four corners of the applicable insurance policy. Based on the four corners of the Deakin Action and Azrad Action and the four corners with the Policy, the Policy specifically excludes coverage for the claims and/or allegations made by DEAKIN and AZRAD.

The Deakin Action specifically refers to the location of the incident giving rise to the claims – BODEGA – as "the Club." *See Ex. C* at ¶ 13. DEAKIN alleges he was knocked to the ground, punched and kicked several times and suffered "significant physical injury, including a fractured nose" and is claiming damages for "significant bodily injury." *See Id.* at ¶¶ 19, 24, 28, 32, 36, 40, 45, 50, and 54.

Similarly, the Azrad Action specifically refers to the location of the incident giving rise to the claims – BODEGA – as a "bar/nightclub." *See Ex. D* at ¶ 3. AZRAD alleges that he was physically battered and assaulted, which resulted in "severe emotional and bodily injury" and is claiming damages for bodily injury. *See Ex. D* at ¶ 15, 18, 21, 29, 31, 37, 39, 45, 47, 52, and 54.

The Policy covers:

> [T]hose sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

*See Ex. A*, at Form CG 00 01 04 13, p. 1 of 17.

20. The Specific Work Exclusion in the Policy states there is no coverage for bodily injury arising out of "[a]ny and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs. *See Ex. A* at Form SGL 312 (10/12).

Based on the above, MT. HAWLEY has no duty to defend VISION and its employees against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. *See Ex. A* at Form CG 00 01 04 13, p. 1 of 17. The Policy does not apply to "bodily injury" arising out of any and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs. *See Id.* at Form SGL 312 (10/12).

In determining MT. HAWLEY's duty to defend VISION and its employees in the Deakin Action and Azrad Action, this Court is bound to the four corners of both actions and the four corners of the Policy. It is undisputed that the claims made by DEAKIN and AZRAD in the Deakin Action and Azrad Action, respectively, arise out of "bodily injury" to DEAKIN and AZRAD. It also is undisputed, based on the four corners of the Deakin Action and Azrad Action, that BODEGA operates as a "bar" and/or "nightclub" and that the individuals alleged to have caused the bodily injuries to both Deakin and Azrad were employed by VISION and acting within the course and scope of their employment with VISION. As such, bodily injury claims in the Deakin Action and Azrad action arose out of VISION and/or its employee's operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs. Therefore, MT. HAWLEY has no duty to defend VISION and its employees in the Deakin Action and Azrad Action.

Likewise, there is no coverage affordable to VISION and its employees for any sums which they become liable for in the Deakin Action and Azrad Action because of "bodily injury" arising out of any and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs.

Therefore, MT. HAWLEY is entitled to summary judgment as a matter of law and a declaration that MT. HAWLEY has no duty to defend or indemnify Respondents BALMACEDA, OQUENDO, OMAR, LEE, CONDE, COSTA, 1220 MANAGEMENT GROUP, LLC d/b/a BODEGA TAQUERIA Y TEQUILA, VISION HOSPITALITY SERVICES, INC., KMJG HOLDINGS, LLC, MENIN HOTELS, LLC d/b/a MENIN HOSPITALITY, LLC for any claims asserted against them in the Deakin Action or Azrad Action.

### D. MT. HAWLEY is entitled to rescind and void the Policy *ab initio* from inception.

In addition to bringing a claim for declaratory relief, pursuant to 28 U.S.C. § 2201, *et seq.*, MT. HAWLEY also brings a Florida common law claim for rescission. Specifically, MT. HAWLEY seeks to rescind the Policy and void it *ab initio.* In a diversity of citizenship case, the Federal District Court is to apply the substantive law of the forum state. *See Erie R.R. v. Tompkins,* 304 U.S. 64 (1938). There is no dispute that Florida substantive law applies as the allegations in the Deakin Action and Azrad Action arose out of incidents in Florida. "Rescission is an equitable remedy, the purpose of which is to undo the original transaction and restore the former status of the parties." *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 U.S. Dist. LEXIS 73180, *19-20 (S.D. Fla. May 2014)(*quoting Billian v. Mobil Corp.*, 710 So. 2d 984, 990-91 (Fla. 4th DCA 1998).

Under Florida law, to state a claim for rescission, the moving party must establish the following six (6) elements:

(1) The character or relationship of the parties;
(2) The making of the contract;
(3) The existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation;

(4) That the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission;

(5) If the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and

(6) That the moving party has no adequate remedy at law.

*Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 U.S. Dist. LEXIS 73180 at *19-20.

> **(1) MT. HAWLEY and VISION entered into a binding contract of insurance whereby MT. HAWLEY agreed to insure VISION against certain liabilities in exchange for and in consideration of premium payment(s).**

It is undisputed that MT. HALWEY and VISION entered into a binding contract of insurance, bearing Policy Number PGA0002171, with an effective policy period of March 19, 2016 through March 19, 2017. *See Ex. A; Ex. F*. Specifically, MT. HAWLEY agreed to insure VISION against certain liabilities as contemplated by the terms of the Policy in exchange for and in consideration of premium payments. *See Ex. A; Ex. F*. As such, MT. HAWLEY has satisfied the first two elements of rescission.

> **(2) VISION made false representations, omissions and/or concealed information in the Application that MT. HAWLEY detrimentally relied upon in issuing the Policy.**

As previously stated, VISION completed a General Liability Insurance Application for Security Guard and Detective/Private Investigators. *See Ex. E*. Paragraph 29 of the Application states, "Please provide percentage breakdown for all security guard and armored car operations below." *See Id.* In response to Paragraph 29, VISION indicated that "100%" of all security guard operations were for "Hotels/Motels." *See Id.* Within Paragraph 29, there is a line item for "Bars/Nightclubs/Taverns" in which VISION left blank or otherwise did not specify a percentage of operations.

The Application was signed by the Chief Executive Officer of VISION, Don Dromerhauser ("DROMERHAUSER"), which contained the following statement:

12

> Notice to applicants: this application must be completed in full **as the quote above will be based solely on the information provided.** Any person who knowingly and with the intent to defraud any insurance company or other person, files an application for insurance containing any false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent act, which is a crime. By signing this application, the signer warrants that to their best knowledge all information given is true and accurate.

*See Id.* (emphasis added). It is undisputed that BODEGA is *not* a hotel or motel and that BODEGA operates as a "Bar/Nightclub/Tavern." MT. HAWLEY would not have issued the Policy had VISION, through its Chief Executive Officer DROMERHAUSER accurately and/or truthfully disclosed that VISION would be providing operations for "Bars/Nightclubs/Taverns." *See Ex. Id.* The misrepresentations, omissions and concealment contained in VISION's Application were material to the acceptance of the risk and to the hazard assumed by MT. HAWLEY. *See Ex. Id.* If the true facts had been known to MT. HAWLEY, it would not have issued the Policy,. *See Id.* This is evidenced by the fact that the Policy includes an Endorsement titled "EXCLUSION – SPECIFIC WORK," Form SGL 312 (10/12) of the Policy, (the "Specific Work Exclusion"), which specifically excludes coverage for any "bodily injury" or "property damage" arising out of any and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs. *See Ex. A,* at Form SGL 312 (10/12). The purpose for asking whether an applicant's operations include "Bar/Nightclub/Tavern" is precisely because Mt. Hawley does not insure companies that provide security services for bars and nightclubs, which is evidenced by the endorsement that excludes coverage for "[a]ny and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs." As such, MT. HAWLEY has satisfied the third element of rescission.

### (3) MT. HAWLEY placed VISION on notice of its intent to rescind the Policy by filing this declaratory judgment and rescission action.

MT. HAWLEY satisfied the fourth element of rescission, which requires that "the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission." *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 U.S. Dist. LEXIS 73180 at *19-20. In *Creative Am. Educ., LLC v. Learning Experience, LLC*, this Court found that the actual rescission of the Policy is not necessary in order to satisfy the fourth element of rescission. In that case, the defendant argued in opposition to the plaintiff's motion for summary judgment that it was not timely notified that the plaintiff intended to rescind the contract. *See Creative Am. Educ., LLC v. Learning Experience*, LLC, 2015 U.S. Dist. LEXIS 61307, *33 (S.D. Fla. May 2015). This Court rejected the defendant's argument and found that "Notification can be satisfied, however, by the filing of a complaint that includes a count for rescission." *See Id.*

MT. HAWLEY has a cause of action for rescission and therefore, has satisfied the fourth element of rescission.

### (4) MT. HAWLEY has offered to refund all premiums paid by VISION under the Policy for the period of March 19, 2016 through March 19, 2017.

The fifth element of rescission requires the rescinding party "allege an offer to restore these benefits to the party furnishing them, if restoration is possible." *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 U.S. Dist. LEXIS 73180 at *19-20. In the instant matter, MT. HAWLEY has offered and agreed to refund all premiums paid by VISION under the Policy for the period of March 19, 2016 through March 19, 2017 in the event that this Court orders that the Policy be rescinded. *See* [D.E. 58 at ¶ 79]; *see also Ex. F*. As such, MT. HAWLEY has satisfied the fifth element of rescission.

### (5) MT. HAWLEY has no other adequate remedy at law other than rescission of the Policy.

Lastly, MT. HAWLEY has no other adequate remedy at law other than the rescission of the Policy. MT. HAWLEY agreed to insure VISION based on its representations and information provided in the Application.

> Notice to applicants: this application must be completed in full **as the quote above will be based solely on the information provided.** Any person who knowingly and with the intent to defraud any insurance company or other person, files an application for insurance containing any false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent act, which is a crime. By signing this application, the signer warrants that to their best knowledge all information given is true and accurate.

*See Ex. E.* (emphasis added). As previously stated, the misrepresentations, omissions and concealment contained in the Application were material to the acceptance of the risk and to the hazard assumed by MT. HAWLEY. *See Id.* If the true facts had been disclosed to MT. HAWLEY that VISION intended to provide security services for "bars/nightclubs/taverns," it would not have issued the Policy. *See Id.* The only adequate remedy at law for VISION's misrepresentations, omissions and/or concealment about the true nature of the services it renders is to rescind the Policy. Moreover, Respondents have failed to set forth any evidence that suggests there is another appropriate remedy at law. As such, MT. HAWLEY has satisfied the sixth element of rescission.

Based upon the Application, and the representations made to MT. HAWLEY as to the nature of VISIONS' operations, which were false and material to the issuance of the Policy, MT. HAWLEY is entitled to summary judgment as a matter of law and an order from the Court rescinding the Policy and deeming the Policy void *ab initio*.

**CONCLUSION**

The allegations in the underlying Deakin Action and Azrad Action demonstrate that both DEAKIN and AZRAD are seeking damages for bodily injuries caused by VISION's agents/employees at BODEGA, a bar, tavern and/or nightclub. The Policy specifically excludes coverage for "bodily injury" arising out of "[a]ny and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs. Based on the eight-corners' rule, MT. HAWLEY has no duty to defend or indemnify Respondents in the Deakin Action or Azrad Action.

Further, VISIONS' misrepresentations, omissions, and/or concealment in the Application for insurance were material because if the true facts had been known to MT. HAWLEY, it would not have issued the Policy. MT. HAWLEY has satisfied all six (6) elements of rescission and therefore is entitled to a rescission of the Policy and to deem it void *ab initio.*

WHEREFORE, MT. HAWLEY INSURANCE COMPANY respectfully requests this Honorable Court grant Summary Judgment in its favor and: (1) declare that MT. HAWLEY INSURANCE COMPANY has no duty to defend Respondents BALMACEDA, OQUENDO, OMAR, LEE, CONDE, COSTA, 1220 MANAGEMENT GROUP, LLC d/b/a BODEGA TAQUERIA Y TEQUILA, VISION HOSPITALITY SERVICES, INC., KMJG HOLDINGS, LLC, or MENIN HOTELS, LLC d/b/a MENIN HOSPITALITY, LLC in the Deakin Action and Azrad Action; (2) declare there is no coverage for any of the claims in the Deakin Action and Azrad Action; (3) rescind and void the Policy *ab initio* by requiring MT. HAWLEY to refund any and all premiums paid by VISION under the Policy for the period of March 19, 2016 through March 19, 2017; and (4) for any other relief this Honorable Court deems just and proper.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C.**

| | | |
|---|---|---|
| By | : | /s/ Michael A. Packer |
| | | Michael A. Packer |
| | | Florida Bar No.: 121479 |
| Primary | : | mapacker@mdwcg.com |
| | | 100 NE 3rd Avenue, Suite 1100 |
| | | Fort Lauderdale, FL 33301 |
| | | Phone: (954) 847-4920 |
| Secondary | : | rrgomez@mdwcg.com |
| | | acdechane@mdwcg.com |
| | | pleadingsftl@mdwcg.com |
| Attorneys for | | *MT. HAWLEY INSURANCE COMPANY* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 29, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Michael A. Packer
Michael A. Packer

LEGAL/120063942.v1

17