UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-21013-CIV-MARTINEZ-OTAZO-REYES

MT. HAWLEY INSURANCE COMPANY,

        *Plaintiff*,

v.

ARTHUR DEAKIN, an individual, ELAN
AZRAD, an individual, FRANKLIN
BALMACEDA, an individual, CHRISTIAN
OQUENDO, an individual, CHEBA OMAR, an
individual, SEAN LEE, an individual, JOE
CONDE, an individual, ALAN COSTA, an
individual, 1220 MANAGEMENT GROUP, LLC
d/b/a BODEGA TAQUERIA Y TEQUILA, a
Florida Limited Liability Company, VISION
HOSPITALITY SERVICES, INC., a Florida
Corporation, KMJG HOLDINGS, LLC, a Florida
Limited Liability Company, MENIN HOTELS,
LLC d/b/a MENIN HOSPITALITY, LLC, a
Florida Limited Liability Company,

_____ _____/

## VISION HOSPITALITY, INC.'S OPPOSITION TO MT. HAWLEY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED[1] CROSS MOTION FOR SUMMARY JUDGMENT

      Mt. Hawley admits its duty to defend is determined solely by reference to the allegations

of the complaints in the Underlying Actions and that any doubt should be resolved in favor of the

Insured. The complaints in the Underlying Actions refer to Bodega as a "restaurant" or "club,"

which is outside the scope of the Specific Work Exclusion. Because the complaints trigger Mt.

Hawley's duty to defend, this Court should deny Mt. Hawley's motion and find that the carrier

owes a duty to defend.

_____

[1] Vision's Cross Motion for Summary Judgment is incorporated herein for the Court's
convenience and to avoid redundancy of the facts and legal issues.

CASE NO. 18-21013-CIV-MARTINEZ-OTAZO-REYES

Mt. Hawley also seeks a declaration from this Court as to its duty to indemnify. This request is premature as the Deakin Action is not resolved. And Mt. Hawley fails to provide any actual facts, beyond those alleged in the Azrad Complaint, which would excuse Mt. Hawley's duty to indemnify.[2]

Mt. Hawley's rescission claim also fails as matter of law. A Certificate of Liability Insurance ("COI") was issued to Bodega three months after the Policy was issued, placing Mt. Hawley on notice that Vision was providing security services to Bodega. Mt. Hawley failed to rescind the Policy at that time and waited twenty one months after the COI was issued, nearly one year after the Deakin Action was filed, and nine months after the Azrad Action was filed, to seek rescission. Mt. Hawley waived any right to rescission when it sat on its rights and engaged in conduct demonstrating an intent to continue the Policy despite the alleged misrepresentation. At minimum, Mt. Hawley's motion raises an issue of fact reserved for the jury as to whether Vision made its alleged false representation with an intent to deceive the insurer.

## I.     **INTRODUCTION**

This action arises from a dispute concerning Mt. Hawley's obligation to defend and indemnify Vision against two underlying lawsuits filed in Miami-Dade Circuit Court ("Underlying Actions"). Pursuant to the commercial general liability policy ("Policy") it issued to Vision, Mt. Hawley is obligated to defend Vision against any "suit" seeking damages covered under the Policy. Distinct from its duty to defend, Mt. Hawley also has a duty to indemnify Vision for "sums that the insured becomes legally obligated to pay as damages because of

---

[2] On March 4, 2019, Vision filed a Motion to Stay Declaration Regarding Mt. Hawley's Duty to Indemnify and Related Deadlines. [D.E. 85]. Should the Court grant Vision's Motion, then the only legal issue before this Court is Mt. Hawley's duty to defend the Underlying Actions.

'bodily injury.'" [D.E. 69-1]. The complaints in the Underlying Actions trigger Mt. Hawley's duties under the Policy, as no exclusion is triggered to preclude coverage.

## II.   ARGUMENT AND MEMORANDUM OF LAW

### A.  Principles of Insurance Policy Interpretation Mandate a Finding in Vision's Favor

The scope of an insurance policy's coverage is defined by the policy's language, the interpretation of which is purely a question of law. *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985). "It has long been a tenet of Florida insurance law that an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer." *Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828, 830 (Fla. 1997). Policy language is to be given its plain and ordinary meaning as understood by the "average" person. *Id*. Coverage provisions should be liberally construed, with ambiguities resolved in favor of the insured. "Where policy language is subject to differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer. [...] In addition, 'when an insurer fails to define a term in a policy, [...] the insurer cannot take the position that there should be a narrow, restrictive interpretation of the coverage provided.'" *State Farm Fire and Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998).

If policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage, the policy is ambiguous. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). "Ambiguity also may arise from silence." *Dahl-Elmers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993). "[A]mbiguous insurance policy exclusions are construed against the drafter and in favor of the insured. In fact, exclusionary clauses are construed even more strictly against the insurer than coverage clauses." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000); *see also*

*Citizens Prop. Ins. Corp. v. Salkey*, 190 So. 3d 1092, 1096-97 (Fla. 2d DCA 2016) (J. Altenbernd, concurring) (finding that neither an insurer's placement of an exclusion in the coverage grant section of a policy nor the nomenclature assigned to the exclusion alters the fact "that these items are exclusions and the [the insurer] has the burden of proof when the coverage issue relates to one of these [items]."). When two policy provisions conflict, the resulting ambiguity must be interpreted in favor of maximum coverage.  *See Dyer v. Nationwide Mut. Fire Ins. Co.,* 276 So. 2d 6, 8 (Fla.1973); *Aromin v. State Farm Fire & Cas. Co.,* 908 F.2d 812, 813 (11th Cir. 1990); *Szczeklik v. Markel Intern. Ins. Co., Ltd.*, 942 F. Supp. 2d 1254, 1264 (M.D. Fla. 2013).

When the policy language at issue is construed, as it must be, in favor of coverage for the insured, there can be no dispute that Mt. Hawley owes a duty to defend Vision.

**B.  Florida Law Requires Mt. Hawley to Defend the Deakin and Azrad Actions**

Mt. Hawley seeks a declaration that it has no duty to defend the Deakin and Azrad Actions based on allegations in the respective complaints, which it claims trigger the Specific Work Exclusion. But the Azrad Complaint refers to Bodega as a "restaurant" and the Deakin Complaint refers to Bodega as a "club." Neither of these descriptions fall within the Specific Work Exclusion.

The duty to defend is broader than the duty to indemnify, and is determined solely by the facts as alleged in the four corners of the complaint. *See Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005); *Hartford Acc. and Indem. Co. v. Beaver*, 466 F.3d 1289, 1292-93 (11th Cir. 2006) ("Following established case law that a liability insurer's duty to defend a claim made against its insured must be determined solely from the allegations in the underlying complaint."); *Grissom v. Commercial Union Ins. Co*., 610 So. 2d 1299, 1307 (Fla. 1st DCA

1992) ("All doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured. So long as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit."); *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co*., 470 So. 2d 810, 813 (Fla. 1st DCA 1985) ("[T]he duty to defend continues even though it is ultimately determined that the alleged cause of action is groundless and no liability is found within the policy provisions defining coverage. If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend."). When the actual facts are inconsistent with the allegations in the underlying complaints, the allegations in the complaints control in determining the insurer's duty to defend under Florida law. *Stephens v. Mid Continent Cas. Co.*, 749 F.3d 1318, 1324 (11th Cir. 2014).

Based on the above, both the Deakin and Azrad Actions allege facts that create potential for coverage under the Policy, therefore Mt. Hawley is required to defend the entire suit. *See Baron Oil Co.*, 470 So. 2d at 813.

**i.    The Specific Work Exclusion is Not Triggered Because There Are No Allegations the Insured Was Operating a Bar, Tavern, Lounge, Gentleman's Club, or Nightclub**

Mt. Hawley's only basis for disputing coverage is an exclusionary endorsement titled "EXCLUSION - SPECIFIC WORK." [DE 69-1] at 29. The exclusion provides in pertinent part:

> This insurance does not apply to "bodily injury" … arising out of the specific work listed in the **Schedule** below, regardless of whether such specific work is conducted by you or on your behalf or whether the specific work is conducted for yourself or for others. …

**SCHEDULE**

**Description Of Specific Work:**

Any and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs.

On its face, the exclusion applies to bodily injury that arises out of the insured's "operations involving bars, lounges, gentlemen's clubs and nightclubs." The exclusion's reference to "operations" does not refer to the premises where Vision is providing services, as Mt. Hawley wrongly contends.

Mt. Hawley advances an interpretation of "operations" as limiting coverage whenever Vision provides services to a bar, tavern, lounge, gentleman's club and nightclub. The breadth of this definition has the effect of subsuming the entirety of Vision's insurance coverage since the Insured's profession (as disclosed in its Application) involves security services for hotels—which include bars and lounges.

Mt. Hawley's interpretation of the word "operations" is an expansive interpretation of the exclusion and is contrary to the plain language of the exclusion itself and Florida law. The endorsement refers only to Vision's "operations." Vision is the party to the insurance contract and whose behavior is being regulated by it. It does not refer to Bodega's "operations." Nor does the word "operations" refer to the premises where Vision is providing services. The word "operations" appears under "Description of Specific Work;" it describes the "specific work." The words "specific work" refer to the *insured's work*, as is evidenced by the clause "whether such specific work is conducted by you or on your behalf …." [DE 69-1] at 29.This interpretation is consistent with the Policy's general definition of "Your work," which "Means: (1) work or operations performed by you or on your behalf …." Policy, Section V - Definitions [D.E. 69-1] at 20. If Mt. Hawley intended the exclusion to apply to "security guard operations" it was incumbent upon Mt. Hawley to expressly say so in the exclusion. *See, e.g., U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 884 (Fla. 2007) ("If U.S. Fire intended to preclude coverage based

CASE NO. 18-21013-CIV-MARTINEZ-OTAZO-REYES

on the cause of action asserted, it was incumbent on U.S. Fire to include clear language to accomplish this result").

Mt. Hawley's Application acknowledges this distinction by stating: "Please provide percentage breakdown for all security guard and armored car operations below." [D.E. 69-5] at 2. Mt. Hawley's failure to include such language – which was clearly available – is proof of the insurer's intent not to restrict coverage and of ambiguity. *Anderson*, 756 So. 2d at 36 (holding a policy provision unclear and ambiguous where clearer, qualifying language was available, but not used); *J.S.U.B., Inc*., 979 So. 2d at 884-85  (rejecting insurer's argument that coverage was precluded after emphasizing that clear exclusionary language was available for use, but not used by the carrier); *St. Luke's Cataract & Laser Institute, P.A. v. Zurich Am. Ins. Co*., 506 Fed. Appx. 970, 977 (11th Cir. 2013) (reasoning that if insurers had intended exclusion to apply to certain conduct, they could and should have drafted the exclusion to clearly say so). In short, under the plain language of the exclusionary endorsement, coverage is excluded only if the complaints allege that Vision's "operations" were not security guard operations but rather "operations involving" a bar, lounge, nightclub, tavern, or gentleman's club—which they do not.

Likewise, the other items listed under the "Description Of Specific Work" make clear that "operations" refers to Vision's work. For example, one of the other items states: "Any and all operations involving bodyguard *work* for high profile clients, celebrities, athletes & entertainers." [DE 69-1] at 29. (emphasis added). Another item states: "Any and all operations involving training of any type to the outside public." *Id.* These items would be nonsensical if "operations" were construed to mean the premises where Vision was providing security services. *See Evanston Ins. Co. v. Gaddis Corp.*, 145 F. Supp. 3d 1140, 1148 (S.D. Fla. 2015) (rejecting insurer's argument that a clause in an exclusion should be read "in absolute isolation, as if it

CASE NO. 18-21013-CIV-MARTINEZ-OTAZO-REYES

were its own exclusion" and holding that "[a]n insurance policy's provisions 'should be read in pari materia'"). In short, under the plain language of the exclusionary endorsement, coverage is excluded only if the complaints allege that Vision's "operations" were not security guard operations but rather "operations involving" a bar, lounge, nightclub, tavern, or gentleman's club—which they do not.

ii.     **The Specific Work Exclusion is Susceptible to Two Reasonable Interpretations Which Should be Construed in Favor of the Insured**

Florida law requires insurers "to make clear precisely what is excluded from coverage. If the insurer fails in the duty of clarity by drafting an exclusion that is capable of being fairly and reasonably read both for and against coverage, the exclusionary clause will be construed in favor of coverage." *See, e.g., Westmoreland v. Lumbermens Mut. Cas. Co*., 704 So. 2d 176, 179 (Fla. 4th DCA 1997).  Thus, "if an exclusionary clause with undefined terms has not been stated with sufficient clarity, then the rule of strict construction requires a construction in favor of the insured." *Id*. at 180.  An "'insurer cannot, by failing to define the terms ... or to include any additional qualifying or exclusionary language, insist upon a narrow, restrictive interpretation of the coverage provided.'" *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1993). These rules of construction foreclose Mt. Hawley's arguments.

The Policy does not define the term "operations." It also does not define the terms "bar, taverns, lounges, gentlemen's clubs and nightclubs." And Mt. Hawley did not qualify the terms bars, nightclubs or lounges with the word "areas." Thus, the starting point for the analysis here is Florida law governing how exclusionary clauses in insurance policies containing critical undefined terms are to be interpreted.

Mt. Hawley cannot insist on an overly expansive definition of the undefined terms "bar, taverns, lounges, gentlemen's clubs and nightclubs." There is no indication that these terms were

CASE NO. 18-21013-CIV-MARTINEZ-OTAZO-REYES

meant to be defined so broadly such that the exclusion would apply to bodily injuries arising out of the insured's work at a restaurant, which happens to have a bar, lounge or dance area. Further, if Mt. Hawley intended for the exclusion to apply to all clubs, it would have said so. Instead, it limited its exclusion to a "nightclub" or "gentleman's club" and neither the Azrad Complaint nor the Deakin Complaint allege Bodega was a nightclub or gentleman's club. Thus, the exclusion must be interpreted to afford coverage here.

Having failed to supply a clarifying definition of the critical term "operation" or "nightclub" and having failed to supply qualifying language which would provide guidance with respect to how the exclusion should be applied, Mt. Hawley cannot now construe these exclusionary provisions expansively to preclude coverage.  For example, Merriam Webster's dictionary defines restaurant as "a business establishment where meals or refreshments may be purchased."  https://www.merriam-webster.com/dictionary/restaurant  (last accessed Mar. 4, 2019). A bar is a place of business "devoted during any time of operation predominantly or totally to serving alcoholic beverages" and "in which the serving of food, if any, is merely incidental …."[3] Fla. Stat. § 386.203.[4] Similarly, "the dominant activity engaged in by a cocktail

---

[3] "Tavern" is synonymous with "bar." *See* https://www.merriam-webster.com/thesaurus/tavern (last accessed Mar. 4, 2019).

[4] Fla. Stat. § 386.203 defines "Stand-alone bar" as

> any licensed premises devoted during any time of operation predominantly or totally to serving alcoholic beverages, intoxicating beverages, or intoxicating liquors, or any combination thereof, for consumption on the licensed premises; in which the serving of food, if any, is merely incidental to the consumption of any such beverage; and the licensed premises is not located within, and does not share any common entryway or common indoor area with, any other enclosed indoor workplace, including any business for which the sale of food or any other product or service is more than an incidental source of gross revenue. A place of business constitutes a stand-alone bar in which the service of food is merely incidental in accordance with this subsection if the licensed premises derives no more than 10 percent of its gross revenue from the sale of food consumed on the licensed premises.

lounge is the sale of alcoholic beverages." *R.K. Cooper, Inc. v. Urgentag Investments, N.V.*, 444 So. 2d 1028, 1029 (Fla. 3d DCA 1984). A nightclub is "a place of entertainment open at night usually serving food and liquor and providing music and space for dancing and often having a floor show." https://www.merriam-webster.com/dictionary/nightclub (last accessed March 4, 2019).

Many restaurants serve alcoholic beverages, play music, have bar areas and allow their patrons to dance, but they are not considered bars, taverns, lounges or nightclubs. Restaurants are subject to different regulations and licensing requirements than bars or nightclubs. *See, e.g.*, *Fla. Stat*. §386.203 (definition of stand-alone bar).The primary distinguishing factor between a restaurant and these other establishments is that a restaurant derives more than an incidental source of their gross revenue from the sale of food. On the other hand, bars, lounges and nightclubs are "devoted … primarily or totally to selling alcoholic beverages" and derive most of their revenue from such sales. Fla. Stat. §386.203; *see also R.K. Cooper*, 444 So. 2d at 1029.

Thus, on its face, the exclusion only applies to bodily injury which arises out of the insured's "operations" (*i.e.*, work) at what are commonly understood to be standalone "bars," "lounges," and "nightclubs." Alternatively, the exclusion is ambiguous and is capable of being read as excluding injuries arising from work done either at (i) stand-alone bars and lounges, or (ii) restaurants with bar and lounge areas. The exclusion must therefore be narrowly construed to afford the greatest possible coverage. *See, e.g. Container Corp. of Am. v. Maryland Cas. Co.*, 707 So. 2d 733, 736 (Fla. 1998) (holding that "because this particular policy language is susceptible to differing interpretations, it too should be construed in favor of the insured"); *Anderson*, 756 So. 2d at 35–36 (same).

**C.  Mt. Hawley's Duty to Indemnify**

**i.        Mt. Hawley's Duty to Indemnify the Deakin Action is Premature**

The Deakin Action is still pending in Miami-Dade Circuit Court. At present, the case is not set for mediation or trial. Deciding issues concerning an insurer's indemnity obligations prior to a final adjudication in a parallel state court proceeding is akin to "putting the judicial cart before the horse." *See Penn Millers Ins. Co. v. A.G.-Mart Produce, Inc.*, 05-CV-1852, 2006 WL 2864402 (M.D. Fla. Oct. 5, 2006). The language of the Policy recognizes this reality, as does Florida law. For these reasons, Vision filed a Motion to Stay Declaration Regarding Mt. Hawley's Duty to Indemnify and Related Deadlines. [D.E. 85].

Under Florida law, an insurer's duty to indemnify is determined by the underlying facts adduced at trial or developed through discovery during the litigation. *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So. 2d 686, 691 (Fla. 4th DCA 2006) (internal quotation marks and citations omitted); *Stephens*, 49 F.3d at 1324 (internal quotation marks and citations omitted).   In other words, to determine whether there is a duty to indemnify, one looks at the actual facts, not only those that were alleged in the state court complaint.  *Id.; Great Am. Assurance Co. v. Walters*, 3:15-CV-1008-J-39JBT, 2015 WL 13567713, at *1 (M.D. Fla. Oct. 7, 2015). For this reason, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim.  *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001).

Of course, Mt. Hawley may have *no* indemnity obligation if a judgment is entered in the Deakin Action in the Insured's favor. It is for this reason as well that the Court may decline to exercise its discretionary jurisdiction over this portion of Mt. Hawley's claim. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (holding that the

Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant."). Mt. Hawley's request to issue a declaration regarding its duty to indemnify, in the hypothetical "potential" event that Vision is found liable in the Deakin Action amounts to nothing more than a request for an impermissible advisory opinion. *See Jacksonville Prop. Rights Ass'n, Inc. v. City of Jacksonville, Fla.*, 635 F. 3d 1266, 1276 (11th Cir. 2011). Mt. Hawley's indemnity obligations cannot be determined until a judgment or settlement in the Deakin Action is reached.

### ii.      Mt. Hawley Failed to Allege Facts Outside of the Azrad Complaint Which Preclude its Duty to Indemnify

Regardless of the allegations of a complaint, it is the underlying facts that determine the insurer's duty to indemnify. Mt. Hawley's duty to indemnify depends on the facts that existed at the time Vision settled the Azrad Action. Mt. Hawley's motion fails to include any actual facts that existed at the time of the settlement. According to the Azrad Complaint, the premises is described as a restaurant/nightclub. Based on these allegations alone, a duty to indemnify is triggered. The actual facts further show that Bodega:

> ➢ serves authentic tacos available for take-out and sit-down lunch and dinner;
> ➢ is the brainchild of Chef Bernie Matz, a connoisseur of the taco;
> ➢ serves "Shepard Style" Mexican street food straight out of a vintage Airstream taco truck, filling the areas void for vibrant, authentic Mexican cuisine; and
> ➢ specializes in mouthwatering tacos and tortas, homemade sodas and authentic beverages in a dynamic, eclectic Mexican "puebla" inspired setting.

*See* Menin  Hospitality, http://meninhospitality.com/collection/restaurants/bodega/ (last visited Mar. 4, 2019) [D.E. 85-1].

Based on the Complaint and the actual facts set forth above, the Specific Work Exclusion is not triggered to deny coverage and Mt. Hawley's motion for summary judgment should be denied.

**D.  Mt. Hawley Is Not Entitled to Rescission of the Policy**

**i.    Mt. Hawley Failed to Prove the Insured Made the Alleged Misrepresentation Knowingly and With an Intent to Deceive or Defraud the Insurer**

Common law insurance policy rescission requires that the insured make a misrepresentation "with conscious intent to deceive." *Metro Life Ins. Co. v. Fugate*, 313 F.2d 788, 792 (5th Cir. 1963) (applying Florida law); *see also Life Ins. Co. of Va. v. Shifflet,* 359 F.2d 501 (5th Cir. 1966) (same); *see also New York Life Ins. Co. v. Kincaid*, 165 So. 553, 557 (Fla. 1935) (recognizing that even if policyholder did not make full disclosure, reinstatement of policy would not be vitiated, because "[t]he test is whether or not his answers to the questionnaire were made in good faith").

As explained in *Roess v. St. Paul Fire & Marine Ins. Co.*, § 627.409 "is in derogation of the common law" because "it allows avoidance of the policy by the insurer even though a misstatement of material fact is made by the insured on an application form in good faith and without knowledge of the falsity of the representation." 383 F. Supp. 1231, 1236 (M.D. Fla. 1974). In addition to the requirements under common law rescission, the Application requires that any false statement be made knowingly and with intent to defraud the insurance company. [D.E. 69-5] at 5. Here, Vision denies that it made any false representations, omissions and/or concealed any information in its Application, but if it did, Mt. Hawley failed to present any evidence that the Insured's alleged misrepresentation was made knowingly and/or with intent to deceive or defraud the insurance company. *See* Ex. A.  If Vision intended to deceive the insurer, it would not have requested *and received* a COI for Bodega less than three months after the Policy was issued. [D.E. 1-3] at 7. At minimum, this is an issue of fact for a jury to decide. *See Shifflet*, 359 F.2d at 502.

**ii.      Mt. Hawley Waived its Right to Seek Rescission**

Mt. Hawley is precluded from seeking rescission because it could or should have done so three months after it issued its Policy. The Policy was issued on March 19, 2016. On June 3, 2016, a COI was issued to Bodega identifying Mt. Hawley as Vision's insurer for the policy period at issue in the underlying lawsuits. The COI not only informs Bodega that Vision is insured but also informs Mt. Hawley that Vision is providing security services for Bodega.

A carrier waives its ability to rescind based upon knowledge it gained after issuing the policy if the insurer does not promptly seek rescission. *See Frisbie v. Carolina Cas. Ins. Co.*, 103 So. 3d 1011, 1012 (Fla. 5th DCA 2012); *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000) ("a party's right to rescind is subject to waiver if he retains the benefits of a contract after discovering the grounds for rescission."); *Continental Ins. Co. v. Kingston*, 114 P.3d 1158 (Utah Ct. App. 2005) (holding that a carrier waived its right to rescind a policy when, after learning of facts warranting rescission carrier waited several months to notify policyholder of its position). Mt. Hawley sat on its rights, engaged in conduct demonstrating an intent to continue the Policy despite the alleged misrepresentation, and waited one year after the Deakin Action was filed before it sought rescission of the Policy. For this reason alone, Mt. Hawley's rescission count cannot stand.

**iii.      Mt. Hawley Did Not Actually Rescind the Policy**

To seek rescission, Mt. Hawley must "actually rescind[] the contract and notify[] the other party accordingly. *See Belaire at Boca, LLC v. Assocs. Ins. Agency, Inc.*, 2007 WL 1812218 (S.D. Fla. June 22, 2007). Mt. Hawley contends it complied by filing an action seeking rescission and cites *Creative American Education, LLC v. Learning Experience System., LLC*, 9:14-CV-80900, 2015 WL 2218847, at *11 (S.D. Fla. May 11, 2015), *aff'd sub nom. Creative*

*Am. Educ., LLC v. The Learning Experience Sys., LLC*, 668 Fed. Appx. 883 (11th Cir. 2016) for this proposition. [D.E. 69] at 14.  But in *Creative American,* this Court determined complied with this requirement because the complaint was filed fewer than four months after the events giving rise to rescission were found. Here, Mt. Hawley did not file its Complaint until twenty-one months after it received notice that Vision was providing security services for Bodega, nearly one year after the Deakin Action was filed, and nine months after Vision was added to the Azrad Action. Thus, *Creative American* is inapplicable since Mt. Hawley did not timely file a complaint seeking rescission and it does not excuse the requirement that it actually rescind the contract and notify Vision prior to filing the complaint.

### iv.    Mt. Hawley Failed to Return Premiums Paid by the Insured

Florida law mandates that a restoration of benefits is a prerequisite to seeking rescission. *Yaffa v. SunSouth Bank*, 3:12CV288/MCR/CJK, 2016 WL 10536038, at *8 (N.D. Fla. Sept. 15, 2016); *Billian v. Mobil Corp.,* 710 So. 2d 984 (Fla. 4th DCA 1998) (stating "the party moving for rescission [must show it] has returned any benefits already received from contract if possible."). The right to rescind is subject to waiver if a party retains the benefits of a contract after discovering the grounds for rescission. *Id.* (citing *Mazzoni Farms*, 761 So. 2d at 313 (Fla. 2000) (stating that a party who "accepts the proceeds and benefits of a contract" is subject to its burdens)).

In *Bankers Insurance Company v. General No-Fault Insurance, Inc*. 814 So. 2d 1119, 1120 (Fla. 4th DCA 2002), the court affirmed the trial court's grant of summary judgment in favor of the insured on Banker's claim for rescission and cancellation.  The matter involved General No-Fault Insurance's claim against Bankers Insurance Company for common law indemnity. The court found, that as to rescission and cancellation, Bankers failed to complete a

CASE NO. 18-21013-CIV-MARTINEZ-OTAZO-REYES

condition precedent by failing to tender all premiums paid by the insured.  The court stated that "[w]here an insurer seeks to rescind a voidable policy, it must both give notice of rescission and return or tender all premiums paid within a reasonable time after discovery for the grounds for avoiding the policy." *Id.* Mt. Hawley has not returned Vision's premium, which precludes it from seeking rescission.

Mt. Hawley's reliance on *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 WL 2215770 (S.D. Fla. May 29, 2014) is misplaced. In *Kaye,* the court stated that "a party need not tender the benefit under the contract if it is impossible for the party to do so." *Id.* at *7 (citations omitted). Thus, the restoration requirement may be excused and replaced with an allegation that a party offered to restore such benefits if restoration is impossible. *Id.*at *8.  *See Gonzalez v. Eagle Ins. Co.*, 948 So. 2d 1 at 3 (Fla. 3d DCA 2006) (stating that the common law principle of indemnity requires the parties to be restored to the status quo, which includes refunding the premium.). Here, Mt. Hawley did not even suggest, much less prove, it was impossible to restore the Insured's benefits therefore its restoration requirement is not excused. Thus, *Kaye* is inapplicable and Mt. Hawley cannot seek rescission.

**v.      Mt. Hawley Waived Any Ability to Rely on the Application Materials Because it Failed to Reconcile Conflicting Information.**

In order to rescind, Mt. Hawley must also prove it relied on material misrepresentations in issuing the Policy.  *Griffin v. Am. Gen. Life & Acc. Ins. Co*., 752 So. 2d 621, 623 (Fla. 2d DCA 1999).  It cannot do so where, as here, it has actual or constructive knowledge that the information presented during the underwriting process is incomplete, incorrect, or untrue.  *See, e.g., N. Miami Gen. Hosp. v. Cent. Nat'l Life Ins. Co*., 419 So. 2d 800, 802 (Fla. 3d DCA 1982). When an insurer is presented with inconsistent or contradictory information during the underwriting process, the insurer has an affirmative legal duty to further inquire and reconcile

CASE NO. 18-21013-CIV-MARTINEZ-OTAZO-REYES

any material conflicts.  *See, e.g., New York Life Ins. Co. v. Strudel*, 243 F.2d 90, 93 (5th Cir. 1957); *Hardy v. Am. S. Life Ins. Co.*, 211 So. 2d 559 (Fla. 1968); *Cox v. Am. Pioneer Life Ins. Co.*, 626 So. 2d 243 (Fla. 5th DCA 1993).  Moreover, when an insurer is on notice of facts that suggest further inquiry is appropriate, the insurer is bound by what a reasonable investigation would have shown. *Cox*, 626 So. 2d at 246.  As the Florida Supreme Court stated:

> [A]n insurance company should not be permitted to lull the assured into a false sense of security […] after knowledge, either actual or constructive, of facts sufficient to avoid the policy, and then when the risk eventuates assert as a basis for escape from liability the existence of facts or conditions of which they were, or should have been, previously aware.

*Johnson v. Life Ins. Co. of Ga.*, 52 So.2d 813, 816 (Fla. 1951).

The Application and related underwriting submissions establish that it was providing services to high-end luxury hotels. Mt. Hawley never asked whether the hotels included bars, lounges, or clubs. It also never inquired further of the hotels listed on a resume received as part of underwriting, which identified previous security services offered to:

- ➢ Turnberry Isle Resort and Spa
- ➢ The Setai, South Beach
- ➢ Morgan's Hotel Group
- ➢ The Shore Club Hotel
- ➢ The Breakers Hotel

These hotels are well known to include bars, lounges, and nightclubs. For example, the Turnberry Isle Resort and Spa has five bars/lounges. *See* Ex. B. The Shore Club has a SkyBar and the Setai has the Bar and Courtyard. *See* Comp. Ex. C. Despite having this list of hotels and having a general knowledge that Vision provides security services to hotels/motels, Mt. Hawley issued the Policy without further inquiring whether these hotels include bars, lounges, or nightclubs to resolve the inconsistencies between how it now claims it interprets its Policy and

the information received. Mt. Hawley is now charged with what that inquiry would have revealed, and cannot avoid its duty to defend and/or indemnify. *See, e.g., Cox*, 626 So. 2d at 246.

### III. MT. HAWLEY'S LATE NOTICE DEFENSE FAILS AS A MATTER OF LAW BECAUSE THE INSURER ASSERTED OTHER GROUNDS TO PRECLUDE COVERAGE AND MT. HAWLEY WAS NOT SUBSTANTIALLY PREJUDICED BY THE INSURED'S CONDUCT

In its Answer and Affirmative Defenses, Mt. Hawley asserts that Vision's claims are barred to the extent Vision failed to provide timely notice of the Deakin Action and Azrad Action. [D.E. 67] at 7. Summary judgment on Mt. Hawley's coverage defense should be granted in Vision's favor for two reasons: first, because Mt. Hawley can articulate no prejudice it suffered by any alleged late notice; and second, Mt. Hawley had reasons other than late notice to deny or reserve its rights under the Policy.

### A. Mt. Hawley's Ability to Deny Coverage on Grounds Other than Late Notice Precludes it from Asserting its "Late Notice" Defense As a Matter of Law

Under Florida law, "where an insure[r] possesses enough information to permit it to deny the claim on other grounds (and it actually did deny the claim on other grounds), it waives its right to object to coverage on the basis that the insured failed to provide timely notice of the claim." *See, e.g.*, *Keenan Hopkins Schmidt & Stowell Contractors, Inc. v. Cont'l Cas. Co.*, 653 F. Supp. 2d 1255, 1262 (M.D. Fla. 2009) (citing *Nationwide Mut. Fire Ins. Co. v. Beville,* 825 So. 2d 999, 1004 (Fla. 4th DCA 2002) and *Wegener v. Int'l Bankers Ins. Co.,* 494 So. 2d 259, 259 (Fla. 3d DCA 1986)). Mt. Hawley claims it has no defense obligations because the Deakin and Azrad complaints allege facts that trigger the Specific Work Exclusion. Mt. Hawley denied coverage for the Azrad Action and issued a Reservation of Rights letter for the Deakin Action based on the Specific Work Exclusion. Mt. Hawley had reasons beyond late notice to deny coverage.

**B.  Mt. Hawley Was Not "Prejudiced" By the Insured's Conduct**

Where an insured has provided late notice of a claim, a rebuttable presumption of prejudice arises. *Tiedtke v. Fid. & Cas. Co. of New York*, 222 So. 2d 206, 209 (Fla. 1969) ("…the proper interpretation of the effect of prejudice in delayed notice cases was that while prejudice to the insurer is presumed, if the insured can demonstrate that the insurer has not been prejudiced thereby, then the insurer will not be relieved of liability merely by a showing that notice was not given 'as soon as practicable.' This appears to be the better view and we adopt it.") (citations omitted).

But where the insurer cannot articulate any prejudicial effect of the alleged late notice, then the insurer cannot rely on that defense to coverage. *Slominski v. Citizens Prop. Ins. Corp.*, 99 So. 3d 973, 976 (Fla. 4th DCA 2012) ("In delayed notice cases, "while prejudice to the insurer is presumed, if the insured can demonstrate that the insurer has not been prejudiced thereby, then the insurer will not be relieved of liability merely by a showing that notice was not given 'as soon as practicable.'") (*citing Tiedtke*).

Mt. Hawley received notice of the Deakin Action two months after Vision was served with the lawsuit and of the Azrad Action nine months after Vision was served. Mt. Hawley denied coverage for two reasons: (1) the Specific Work Exclusion; and (2) late notice. Mt. Hawley has not articulated anything that it would have otherwise done if it had received what it felt was timely notice. Mt. Hawley denied coverage for the Azrad Action based on the reasons above, therefore late notice would only permit it to deny coverage earlier. Mt. Hawley provided a defense under a Reservation of Rights to Vision for the Deakin Action and no prejudice resulted as discovery is just gearing up in that case.

IV.    **CONCLUSION**

Mt. Hawley's Motion should be denied. The complaints in the Underlying Actions refer to Bodega as a "restaurant" or "club," which is outside the scope of the Specific Work Exclusion and trigger Mt. Hawley's duty to defend. Mt. Hawley's duty to indemnify is premature as the Deakin Action is not resolved and Vision's Motion to Stay Declaration Regarding Mt. Hawley's Duty to Indemnify and Related Deadlines is pending before this Court. [D.E. 85]. Mt. Hawley's rescission claim similarly fails as a matter of law as it sat on its rights for close to two years and engaged in conduct demonstrating an intent to continue the Policy.

Vision's Cross Motion for Summary Judgment should be granted as the narrow issue of whether Mt. Hawley has a duty to defend raises a pure question of law for the Court that must be determined solely by two documents – the complaint in each underlying case and the Mt. Hawley insurance policy at issue. These documents indisputably establish that Mt. Hawley has a duty to defend Vision in both Underlying Actions. Mt. Hawley's entire case is premised upon a flawed and expansive interpretation of the Specific Work Exclusion, which does not excuse it from its duty to defend or indemnify Vision. Its premise directly contradicts well-settled Florida law on insurance policy construction, which requires exclusionary clauses to be strictly construed against insurers and in favor of coverage.

WHEREFORE, Defendant, Vision Hospitality Services, Inc., respectfully requests that this Court enter and Order denying Mt. Hawley's Motion for Summary Judgment and granting Vision's Cross Motion for Summary Judgment, and for such other relief this Court deems equitable, just and proper.

CASE NO. 18-21013-CIV-MARTINEZ-OTAZO-REYES

Respectfully Submitted,

VER PLOEG & LUMPKIN, P.A.
100 S.E. Second Street
Thirtieth Floor
Miami, Florida 33131
Tel: (305) 577-3996
Fax: (305) 577-3558

*/s/ Christine A. Gudaitis*
**Christine A. Gudaitis, Esq.**
Florida Bar No. 0502693
cgudaitis@vpl-law.com
**Camilla J. Cohen, Esq.**
Florida Bar No. 106899
ccohen@vpl-law.com

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on this 4th day of March 2019 on all counsel of record on the Service List below.

*/s/ Christine A. Gudaitis*
**Christine A. Gudaitis, Esq.**

## SERVICE LIST

Michael A. Packer, Esq.
Aaron D. Silvers, Esq.
Marshall Dennehey Warner
Coleman & Goggin, P.C.
100 N.E. 3rd Avenue, Suite 1100
Ft. Lauderdale, FL 33301
Telephone: (954) 847-4920
mapacker@mdwcg.com
adsilvers@mdwcg.com
rrgomez@mdwcg.com
*Attorneys for Plaintiff*
*Mt. Hawley Insurance Company*

Joel S. Magolnick, Esq.
Omar Ali-Shama, Esq.
Marko & Magolnick, P.A.
3001 S.W. 3rd Avenue
Miami, FL 33129
Telephone: (305) 285-2000
Facsimile: (305) 285-5555
magolnick@mm-pa.com
omar@mm-pa.com
*Attorneys for Defendant*
*Arthur Deakin*

CASE NO. 18-21013-CIV-MARTINEZ-OTAZO-REYES

Chase A. Berger, Esq.
Casey H. Cusick, Esq.
Ghidotti Berger LLP
3050 Biscayne Blvd., Suite 402
Miami, Florida 33137
Telephone: (305) 501-2808
Facsimile: (955) 780-5578
cberger@ghidottiberger.com
ccusick@ghidottiberger.com
*Attorneys for Defendants*
*1220 Management Group, LLC d/b/a*
*Bodega Taqueria y Tequila, KMJG*
*Holdings, LLC and Menin Hotels, LLC*
*d/b/a Menin Hospitality, LLC*

Christine A. Gudaitis, Esq.
Arya A. Li, Esq.
Camilla J. Cohen, Esq.
Ver Ploeg & Lumpkin, P.A.
100 S.E. Second Street
Thirtieth Floor
Miami, Florida 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3558
cgudaitis@vpl-law.com
ali@vpl-law.com
ccohen@vpl-law.com
*Attorneys for Defendant*
*Vision Hospitality Services, Inc.*

Dallas A. Robinson, Esq.
Robinson Trial Lawyers, P.A.
9000 Sheridan Street
Suite 104
Pembroke Pines, FL 33024
Tel: (954) 632-6607
dallas@robinsontriallawyers.com
*Attorneys for Defendant*
*Elan Azrad*