UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:   1:18-cv-21013-JEM

MT. HAWLEY INSURANCE COMPANY,
an Illinois Corporation,

    Petitioner,
vs.

ARTHUR DEAKIN, an individual, ELAN AZRAD, an individual, FRANKLIN BALMACEDA, an individual, CHRISTIAN OQUENDO, an individual, CHEBAB OMAR, an individual, SEAN LEE, an individual, JOE CONDE, an individual, ALAN COSTA, an individual, 1220 MANAGEMENT GROUP, LLC d/b/a BODEGA TAQUERIA Y TEQUILA, a Florida Limited Liability Company, VISION HOSPITALITY SERVICES, INC., a Florida Corporation, KMJG HOLDINGS, LLC, a Florida Limited Liability Company, MENIN HOTELS, LLC d/b/a MENIN HOSPITALITY, LLC, a Florida Limited Liability Company,

    Respondents.
_____/

**PETITIONER, MT. HAWLEY INSURANCE COMPANY'S
REPLY TO RESPONSE BY VISION HOSPITALITY SERVICES, INC.
IN OPPOSITION TO MT. HAWLEY INSURANCE COMPANY'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

MT. HAWLEY INSURANCE COMPANY ("MT. HAWLEY"), by and through its undersigned counsel, files its Reply to Response by Vision Hospitality Services, Inc. ("VISION") in Opposition to MT. HAWLEY's Motion for Summary Judgment [DE 86], and in support thereof states as follows:

VISION's Response in Opposition to MT. HAWLEY's Motion for Summary Judgment ("Response") is untimely and barred by Local Rule 7.1(c). As a result, MT. HAWLEY filed a Motion to Strike same. Irrespective of the untimeliness of VISION's Response, VISION's memorandum of law is factually misleading and is without legal merit.

I. MEMORANDUM OF LAW

   A. **VISION'S RESPONSE IN OPPOSITION TO MT. HAWLEY'S MOTION FOR SUMMARY JUDGMENT IS RIFE WITH ERRORS AND MISSTATEMENTS OF THE FACTS AND THE LAW**

      a. **VISION repeatedly misstates the facts regarding the type of business Bodega is engaged in, in a failed attempt to eliminate it from the Policy Exclusion**

VISION makes an obvious, but failed, attempt to re-characterize the type of business Bodega is in, in order to avoid the Policy's exclusion by misquoting the words used in the underlying Complaints, adding language that is NOT in the Policy, attempting to eliminate the real meaning behind those words, and covering up the actual type of business Bodega runs.

Throughout its Response in Opposition, VISION repeatedly misquotes the specific words used in the underlying Complaints. Specifically, to make its argument that neither Complaint alleges terms that fall within the Specific Work Exclusion, VISION erroneously and misleadingly claims that the Azrad[1] Complaint refers to Bodega as a "restaurant" and the Deakin Complaint refers to Bodega as a "club." (See Response [DE 86], page 4, second to last paragraph.)

However, when the Complaints are each viewed as a whole, the evidence is overwhelming that VISION's characterization is misleading at best and just plain wrong at worse. In the Deakin Complaint, Deakin's first reference to Bodega is as a "club." (*See* Deakin Complaint at ¶ 12, attached as exhibit B to Exhibit C to MT. HAWLEY's Motion for Summary Judgment [DE 69].) The next three paragraphs illuminate the meaning of the word "club" by providing context in describing the personnel who worked there and allegedly caused his injuries as "bouncers/security personnel" (¶¶ 13, 14, 15). **Not once does Deakin ever refer to Bodega as a restaurant or any other type of establishment**. Similarly, in the Azrad Complaint, his first reference to Bodega is as a "**bar/nightclub**" where the incident occurred. (*See* Azrad Complaint at ¶ 3, attached as Exhibit

---

[1] MT. HAWLEY has been advised that VISION has settled the lawsuit filed by Azrad.

D to MT. HAWLEY's Motion for Summary Judgment [DE 69].) Azrad also refers to Bodega throughout the Complaint as a "**restaurant/nightclub**" (¶¶ 4, 5, 6, 7), a "**nightclub**" (¶¶ 12, 13), and a "**restaurant/bar**" (¶¶ 24, 32, 40). **Not once does Azrad ever refer to Bodega merely as a restaurant (much less a hotel or motel)**. Azrad refers to the persons he alleges are responsible for his injuries as a "bouncer/security person" (¶ 9), further providing context for the words used in these allegations.

VISION further tries to confuse the Court by injecting language into the Policy by using the phrase "stand-alone" before the words bar and nightclub. The qualifier of "stand-alone" does not exist in the Policy. VISION even goes so far as claiming that "neither the Azrad Complaint nor the Deakin Complaint allege Bodega was a nightclub." [DE 86, page 9 of 22.] However, in looking at the Complaints themselves, as described above, that is clearly false.

    b.  **The terms in the Policy Exclusion are unambiguous and should be interpreted** *in pari material*

The entire provision cited in MT. HAWLEY's exclusion states as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY**

**EXCLUSION – SPECIFIC WORK**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2. Exclusions** of **COVERAGE B PERSONAL AND ADVERTISING INJURY** (Section I – Coverages)

**Specific Work**

This insurance does not apply to "bodily injury," "property damage" or "personal advertising injury" arising out of the specific work listed in the **Schedule** below, regardless of whether such specific work is conducted by you or on your behalf or whether the specific work is conducted for yourself or for others.

This exclusion also applies even if other causes contribute to or aggravate the "bodily injury," "property damage" or "personal advertising injury."

3

SCHEDULE

**Description Of Specific Work:**

Any and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs.

\* \* \*

*See Policy* at Form SGL 312 (10/12).

VISION's misrepresentative characterization of Bodega are solely meant to lead the Court astray into believing it's version of the allegations or that there is an issue of fact. Neither could be further from the truth. Azrad uses only the following words/phrases to describe Bodega - "**bar/nightclub**," "**restaurant/nightclub**," "**nightclub**," and "**restaurant/bar**." Deakin refers to it as a "**Club**." They both describe the persons responsible for their injuries as bouncers, a commonly used term for security personnel at a bar, nightclub, lounge, or gentleman's club.

Courts are required to construe policies in their entirety in order to give each provision it full meaning and operative effect. *Evanston Ins. Co. v. Gaddis Corp.*, 145 F. Supp. 3d 1140, 1146 (S.D. Fla. September 1, 2015); *State Farm Fire & Cas. Co. v. Steinberg*, 393 F. 3d 1226, 1230 (11th Cir. 2004). "A court's inquiry begins with 'the plain language of the policy, as bargained for by the parties.'" *Gaddis*, 145 F. Supp. 3d at 1146 (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). See also, *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) ("[The] terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties."

There can be no doubt from the allegations in the Complaints that Bodega is the type of establishment described in the Schedule of the Policy's Exclusion – Specific Work of "bars, taverns, lounges, gentlemen's clubs and nightclubs." There is no ambiguity in the words used in the Policy and an insurer is not required to incorporate every conceivable word or synonym to describe the exclusion. See *Vantage Dev. Corp. v. Am. Env't Techs. Corp.*, 251 N.J. Super. 516,

529, 598 A. 2d 948, 955 (N.J. Super. Ct. 1991) ("While there may well be a host of synonyms which could have been added to the exclusion [], a failure to convert an insurance policy into a veritable thesaurus cannot serve to create ambiguity where none exists.")

Contrary to well settled law regarding policy interpretation, VISION complains that this Policy does not qualify the words bars, nightclubs, or lounges by adding the term, "areas" in the exclusion or by adding definitions for commonly understood words.

However, the only reasonable, practical and sensible interpretation of the Policy is that Bodega, as described in the allegations in the Complaints (and in VISION's Response) is precisely the type of establishment described in the Schedule of the Policy's Exclusion – Specific Work. Specifically, in the Second Amended Complaint filed in the Deakin Complaint,

> 12. At all relevant times. Bodega operated a club at 1221 16th Street, in Miami Beach (the "Club").
> 13. Bodega employs/engages bouncers/security personnel for the Club.
> 14. Vision provided bouncers/security personnel for Bodega.
> 
> ***
> 
> 16. At all relevant times, the Security Guards were working for Vision at Bodega.
> 17. At all relevant times, the Security Guards were under the direct supervision and control of Bodega and Vision.
> 18. During the early morning of November 26, 2016, Deakin was a patron and business invitee at the Club.
> 19. While Deakin was inside the Club, the Security Guards, without provocation from Deakin, attacked Deakin, knocking him to the ground, punching and kicking him several times, causing him to suffer significant physical injury, including a fractured nose.

As demonstrated by the plain and express allegations contained within the the Complaints as reflected above, the allegations within the four corners of the Deakin Complaint do not create the potential for coverage under the Policy; instead, they clearly demonstrate and confirm the basis for the exclusion.

**c. VISION's attempt to re-define the plain meaning of "operations" fails**

VISION then attempts to take the word "operations" out of context from the Policy's provision and re-define it to mean VISION would have to be the operator of the bar, tavern, lounge, gentlemen's club and nightclub, in order for the exclusion to apply. But, per the case law cited in both MT. HAWLEY's Motion and VISION's Response, a word or a clause in an exclusion should not be read in absolute isolation, but instead "[a]n insurance policy's provisions 'should be read *in pari material*.'" *Gaddis*, 145 F. Supp. 3d at 1148.

The Policy states that the insurance does not apply to "bodily injury" <u>arising out of</u> the specific work listed in the Schedule, <u>regardless of whether such specific work is conducted by you or on your behalf or whether the specific work is conducted for yourself or for others</u>. The Schedule is a <u>description</u> of the specific work, and included as one of many categories or types is, "Any and all operations <u>involving</u> bars, taverns, lounges, gentlemen's clubs and nightclubs." (emphasis added)

The Florida Supreme Court has ruled the phrase "arising out of" in insurance policy exclusions is unambiguous and should be interpreted broadly. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528 (Fla. 2005). The Court explained that the term "arising out of" is broader in meaning than the term "caused by" and means "originating from," "having its origin in," "growing out of," "flowing from," "incident to" or "having a connection with." *Id.*

Unquestionably, the word "operations" speaks to VISION's work, and the Policy provides whether it is conducted "for yourself" – as in an operator of those types of establishments – OR "for others" – as in, for Bodega, as alleged. The words following the phrase "**Description Of Specific Work:**" provides that VISION's operations, or work, is excluded if it **involves** bars, taverns, lounges, gentlemen's clubs and nightclubs, which is exactly what is alleged in the Complaints. Coverage does not apply to "bodily injury" arising out of any operations of VISION involving bars, taverns, lounges, gentlemen's clubs and nightclubs.

As the courts have ruled, "[w]here the allegations in the complaint show that no coverage exists or a policy exclusion applies, no duty to defend arises." *James River Ins. Co. v. Bodywell Nutrition, LLC*, 842 F. Supp. 2d 1351, 1354 (S.D. Fla. 2012) (citing *Posigian v. Am. Reliance Ins. Co. of N.J.*, 549 So. 2d 751, 753 (Fla. 3d DCA 1989)).

In determining MT. HAWLEY's duty to defend VISION and its employees in the Deakin Action and Azrad Action, this Court is bound to the four corners of both actions and the four corners of the Policy. It is undisputed that the claims made in the Deakin Action and Azrad Action arise out of "bodily injury" to Deakin and Azrad allegedly caused by employees of VISION while providing security/bouncer services at and for Bodega, a "bar" and/or "nightclub." As such, bodily injury claims in the Deakin Action and Azrad action arose out of VISION and/or its employee's operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs. Therefore, MT. HAWLEY has no duty to defend VISION and its employees in the Deakin Action and Azrad Action.

Likewise, there is no coverage afforded to VISION and its employees for any sums they become liable for in the Deakin Action and Azrad Action because of "bodily injury" arising out of any and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs.

As provided in MT. HAWLEY's Motion for Summary Judgment and herein, the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation. Thus, MT. HAWLEY is entitled to final summary judgment.

### d. MT. HAWLEY's Acton and Motion for Summary Judgment as to Duty to Indemnify is not Premature

Contrary to VISION's claim, resolution of the underlying claim(s) is not necessary prior to a determination of coverage. First, VISION mistakenly relies on *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D. Fla. September 13, 2001), which was effectively overruled by *RSUI Indemnity Company v. Desai, et. al*, 2014 U.S. Dist. LEXIS 57215 (M.D. 2014).

The *Desai* Court held that to the extent the Court in *Northland* stated "any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying," that was no longer "an accurate statement of law" in Florida. *Desai*, 2014 US Dist. LEXIS 57215, *7. The *Desai* Court stated, "[u]nder Florida law, whether the declaratory action or the underlying action between the claimant and the insured is to proceed first hinges on the infinite variety of circumstances that prevents any one rule from applying in all cases. *Id*. at *8. See also, *Penn-America Ins. Co. v. Deslin Hotels, Inc*., 2012 U.S. Dist. LEXIS 151361 (M.D. Fla. Oct. 22, 2012) ("[s]ince *Northland*, however, the Florida Supreme Court has changed its interpretation of declaratory judgment actions such that now "an insurer may pursue a declaratory action which requires a determination of the existence or nonexistence of a fact upon which the insurer's obligations under an insurance policy depend.").

For the reasons and evidence provided above and in MT. HAWLEY's Motion for Summary Judgment, there is no duty to indemnify for the claims alleged in either the Deakin Action or the Azrad Action.

> e. **The facts alleged in the Petition and underlying Complaints, and the evidence in the Motion for Summary Judgment are sufficient for the Court to determine there is no duty to indemnify where the Policy expressly excludes coverage**

VISION claims that MT. HAWLEY fails to allege additional facts and provide additional information regarding food offered at Bodega. However, the fact that Bodega offers food does not turn it into merely a restaurant. Bodega's actual website, rather than Menin Hotels' website, when viewed in its entirety, makes it clear it includes the type of operations excluded, as it describes the facility as including a "bar" and "lounge" and offering services such as "bottle service," "happy hour," "late night debauchery" and "live music."[2] All are commonly known to occur and be provided by nightclubs, bars, taverns and lounges.

---

[2] https://www.bodegasouthbeach.com/location/bodega-taqueria-tequila

### B. MT. HAWLEY HAS DEMONSTRATED IT IS ENTITLED TO RESCISSION

#### a. VISION misstates the law with regard to rescission

VISION's case law and interpretation thereof regarding rescission and the requirement that there be a misrepresentation with "a conscious intent to deceive" does not accurately reflect the only circumstance in which common law rescission is available. MT. HAWLEY need only, and indeed did, allege "the existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation." See *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 U.S. Dist. LEXIS 73180, *19-20 (S.D. Fla. 2014). However one characterizes the information VISION provided on the application for insurance (Exhibit E to DE 69), it is clear that VISION had the opportunity to provide the nature of its operations as a percentage of armed or unarmed under many types of operations. VISION chose to only mark one – that was 100% under unarmed at Hotels/Motels. All others, including Bars/Nightclubs/Taverns, are left blank. That act, whether characterized by VISION as an intentional fraud or misrepresentation or a mistake or any other ground, still meets the criteria for rescission under the law.

Similarly, VISION's reference to the law regarding notice and return of premiums is incorrect. MT. HAWLEY was only required to offer the refund, which it did along with notice though this action. Thus, MT. HAWLEY has met the requirements for common law rescission and summary judgment should be granted in its favor.

#### b. VISION misstates the law with regard to waiver of right to rescission

VISION claims MT. HAWLEY waived its right to rescind after issuing a Certificate of Insurance (COI) to Bodega. However, the COI was not issued by MT. HAWLEY. Further, the cases cited misstate the law. *Frisbie v. Carolina Cas. Ins. Co.*, 103 So. 3d 1011, 1012 (Fla. 5th DCA 2012) was a *per curium* decision without any details. The case was remanded, summary judgment was granted again to the insurer/Appellee, who argued that the material

9

misrepresentations constituted unclean hands and precluded Appellants from asserting the affirmative defenses of waiver or estoppel in answer to Appellee's claim for rescission. *Frisbie v. Carolina Cas. Ins. Co.*, 162 So. 3d 1079, 1080 (Fla. 5th DCA 2015). That is not what VISION purports as the holding.

Similarly, VISION'S reliance on *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000) is unpersuasive because MT. HAWLEY offered return of premiums. And, VISION misstates the holding in *Continental Ins. Co. v. Kingston*, 114 P. 3d 1158 (Utah Ct. App. 2005). In that case, the insurer waived the right to rescind, not due to the amount of time that passed after finding out grounds for rescission, but instead the insurer engaged in a course of conduct demonstrating its intent to cover the loss after discovering the grounds, including undertaking repairs to restore the home, obtaining commitments from contractors to do restoration work, and authorizing restoration work to commence. *Id.* None of those actions, or even that type of conduct by MT. HAWLEY, has occurred in this case. In fact, MT. HAWLEY informed VISION that there may not be coverage, and only agreed to provide a defense in one of the underlying suits under a complete Reservation of Rights. Thus, the cases cited by VISION and its claimed holdings are improperly argued to this Court.

Finally, VISION claims MT. HAWLEY waived its right to rescind because it had an affirmative duty to discover the true nature of its services and operations. In its argument, VISION claims MT. HAWLEY should have known or asked if any of the hotels that it provided operations for included bars, lounges, or clubs. However, as stated above, VISION had the opportunity to mark the application truthfully when it specifically provided boxes to indicate where its operations were, including bars/nightclubs/taverns. VISION's argument is circular. It cannot reasonably claim MT. HAWLEY did not inquire, when the very application to which it refers as evidence shows the question was explicitly asked.

C. **CONCLUSION**

For all of the foregoing reasons, VISION's Response in Opposition to MT. HAWLEY's Motion for Summary Judgment fails both factually and legally. There are no genuine issues of material fact and MT. HAWLEY is entitled to summary judgment as a matter of law that it has no duty to defend or indemnify the Respondents to this action for any claims asserted against them in the Deakin Action or the Azrad Action. Furthermore, MT. HAWLEY is entitled to summary judgment as a matter of law that the Policy be deemed void *ab initio* and rescinded.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C.**

| | | |
|---|---|---|
| By | : | /s/ Michael A. Packer |
| | | Michael A. Packer |
| | | Florida Bar No.: 121479 |
| Primary | : | mapacker@mdwcg.com |
| | | Mary E. Corbin |
| | | Florida Bar No.: 84101 |
| Primary | : | mecorbin@mdwcg.com |
| | | 100 NE 3rd Avenue, Suite 1100 |
| | | Fort Lauderdale, FL 33301 |
| | | Phone: (954) 847-4920 |
| Secondary | : | mspenela@mdwcg.com |
| | | acdechane@mdwcg.com |
| | | pleadingsftl@mdwcg.com |
| Attorneys for | | MT. HAWLEY INSURANCE COMPANY |

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true copy of the foregoing **Reply to Vision's Response to Petitioner's Motion for Summary Judgment** was electronically filed via CM/ECF this 11th day of March, 2019, to all parties of record.

/s/ Michael A. Packer
Michael A. Packer

LEGAL/121480825.v1