UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:   1:18-cv-21013-JEM

MT. HAWLEY INSURANCE COMPANY,
an Illinois Corporation,

     Petitioner,
vs.

ARTHUR DEAKIN, an individual, ELAN AZRAD, an individual, FRANKLIN BALMACEDA, an individual, CHRISTIAN OQUENDO, an individual, CHEBAB OMAR, an individual, SEAN LEE, an individual, JOE CONDE, an individual, ALAN COSTA, an individual, 1220 MANAGEMENT GROUP, LLC d/b/a BODEGA TAQUERIA Y TEQUILA, a Florida Limited Liability Company, VISION HOSPITALITY SERVICES, INC., a Florida Corporation, KMJG HOLDINGS, LLC, a Florida Limited Liability Company, MENIN HOTELS, LLC d/b/a MENIN HOSPITALITY, LLC, a Florida Limited Liability Company,

     Respondents.
_____/

**PETITIONER, MT. HAWLEY INSURANCE COMPANY'S
RESPONSE IN OPPOSITION TO VISION HOSPITALITY SERVICES, INC.'S
CROSS MOTION FOR SUMMARY JUDGMENT**

MT. HAWLEY INSURANCE COMPANY ("MT. HAWLEY"), by and through its undersigned counsel, files this Response in Opposition to Vision Hospitality Services, Inc.'s ("VISION") Cross Motion for Summary Judgment [DE 87], and in support thereof states as follows:

In a combined document, VISION incorporated a Cross Motion for Summary Judgment into its response in opposition to MT. HAWLEY's Motion for Summary Judgment. VISION's document [DE 87] is unclear as to exactly what grounds the Cross Motion is based because

VISION asks for summary judgment on MT. HAWLEY's coverage defense as to "late notice"[1] in Paragraph III., but then VISION asks for summary judgment in its favor on the "narrow issue of whether Mt. Hawley has a duty to defend" in the Conclusion in Paragraph IV. Nevertheless, MT. HAWLEY responds in opposition to both arguments in VISION's memorandum of law as they are factually misleading and are without legal merit.

I. MEMORANDUM OF LAW

   A. VISION'S CROSS MOTION FOR SUMMARY JUDGMENT AS TO LATE NOTICE MISSTATES THE FACTS, LACKS ANY EVIDENCE TO REBUT THE PRESUMPTION OF PREJUDICE, AND IS WITHOUT LEGAL MERIT

      a. **First, VISION misstates the facts with regard to the late notice and presents no evidence in support of its motion for summary judgment**

VISION mischaracterizes the facts with regard to notice of the claims reflected in both the Deakin Action[2] and Azrad Action[3] and presents no admissible evidence to support its version of the facts. The truth is that MT. HAWLEY was finally notified of the incident that led to the Deakin Action over one year after it occurred, and of the incident that lead to the Azrad Action over one and a half years after it occurred. VISION tries to mislead the Court by referencing only the period of time that elapsed between the filing of the lawsuits and notice to MT. HAWLEY. However, the Policy requires timely notice of an "occurrence", not just a lawsuit. In fact, MT. HAWLEY was not placed on notice of either incident until the respective lawsuits were filed.

Regarding the Deakin Action, VISION misleads the Court in the facts by stating that MT. HAWLEY received notice of the claim two months after VISION was served with the lawsuit. But, while MT. HAWLEY did receive notice (from Deakin's attorney) on December 1, 2017 as to

---

[1] While late notice constitutes part of the cause of action of MT. HAWLEY's Second Amended Petition [DE 58] (as Count III re: Deakin Action and as Count V re: Azrad Action), it was not one of the grounds for its Motion for Summary Judgment [DE 69] filed on 1/29/2019.
[2] *Arthur Deakin v. 1220 Management Group, LLC, et al.*, Case No. 2017-007892-CA-31, presently pending in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "Deakin Action").
[3] *Elan Azrad v. KMJG Holdings, LLC, et al.*, Case No. 2017-009586-CA-01, filed in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, which was settled by VISION ("Azrad Action")

the filing of the Deakin Action, VISION fails to inform that the incident occurred on November 26, 2016, making notice <u>over one year</u> after the alleged incident, which is in violation of the Policy.

Similarly as to the Azrad Action, VISION misleadingly states that MT. HAWLEY was informed nine months after suit was served. However, the Azrad Action alleges the incident occurred on November 22, 2016; yet, MT. HAWLEY was not placed on notice of the claims until April 23, 2018, nearly one and a half years later, and that only happened after a default had been entered against VISION.

The subject-matter Policy required the following post-loss duties and obligations of VISION:

> **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
>    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
>       **(1)** How, when and where the "occurrence" or offense took place;
>
>       **(2)** The names and addresses of any injured persons and witnesses; and
>
>       **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
>    **b.** If a claim is made or "suit" is brought against any insured, you must:
>
>       **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
>
>       **(2)** Notify us as soon as practicable.
>
>    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
>    **c.** You and any other involved insured must:
>
>       **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
>       **(2)** Authorize us to obtain records and other information;
>
>       **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>
>       **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

(see Policy, Number PGA0002171, issued by MT. HAWLEY to VISION, attached as Exhibit "C" to the Second Amended Complaint).

Based on the allegations in the Deakin Action and the Azrad Action, the incidents occurred on November 26, 2016 and November 22, 2016, respectively. Thus, VISION was required, but failed to notify MT. HAWLEY as soon as practicable of the "occurrence" which resulted in the subject claims. "As soon as practicable of the 'occurrence'" would have been shortly after the alleged incidents occurred; not one year or one and a half years later. Florida law is clear that failure to provide timely notice of loss, in derogation of the policy provisions, is a legal basis for denial of a claim under the policy. See *Ideal Mutual Ins. Co. v. Waldrep*, 400 So. 2d 782 (Fla. 3d DCA 1981) ("notice is necessary when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise").

In addition, VISION itself failed to immediately send MT. HAWLEY copies of demands, notices, summonses or legal papers received in connection with the claims in either Action. Instead, MT. HAWLEY was notified through other means many months later.

VISION's failure to comply with its duties and obligations as addressed above substantially prejudiced MT. HAWLEY, including but not limited to, its ability to investigate the claims; to identify, locate and interview potential witnesses at or near the time of each of the incidents; to gather pertinent documents and evidence that may have only existed at or near the time of the incidents; to assess or mitigate risk associated with providing a defense on behalf of its insured in any potential actions; and to potentially settle any covered claims to avoid suits altogether.

**b. VISION misstates the law with regard to presumption of prejudice, the shifting burden to rebut, and waiver of late notice as a defense**

The Florida Supreme Court has ruled that failure to give timely notice creates a rebuttable presumption of prejudice to the insurer. *Bankers lns. Co. v. Macias,* 475 So. 2d 1216 (Fla. 1985)

4

(holding "[i]f the insured breaches the notice provision, prejudice to the insurer will be presumed but may be rebutted" and "[t]he burden should [then] be on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts and to examine the insured.)

"The question of whether an insured's untimely reporting of loss is sufficient to result in the denial of recovery under the policy implicates a two-step analysis." *LoBello v. State Farm Fla. Ins. Co.,* 152 So. 3d 595, 599 (Fla. 2d DCA 2014) *(citing Macias*, 475 So. 2d at 1218). See also *1500 Coral Towers Condo. Ass'n v. Citizens Prop. Ins. Corp.,* 112 So. 3d 541, 543-45 (Fla. 3d DCA 2013) (applying a two-step analysis to the question).

"The first step is to determine whether the insured provided timely notice." *Id*. If notice was untimely, prejudice to the insurer is presumed. *Macias,* 475 So. 2d at 1218. In the second step, the insured must overcome the presumption by proving that the insurer was not prejudiced by noncompliance with the condition of timely notice. *Id*. The burden of overcoming the presumption of prejudice is on the insured. *Id*. If the insured is unable to overcome the presumption of prejudice, then the insurer will prevail on a defense of untimely notice. *Id*.

The MT. HAWLEY insurance Policy states that the insured **must** see to it that the insurance company is "notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." Florida courts have ruled that an insurer is prejudiced when the very purpose of the prompt notice requirement is frustrated, such as the insurer's ability to investigate, mitigate the damages, or settle. *1500 Coral Towers,* 112 So. 3d at 544. See also *Yacht Club on the Intracoastal Condo. Assn v. Lexington Ins. Co.,* 2015 U.S. App. LEXIS 293, *1, *4 (11th Cir. Fla. Jan. 8, 2015) (The USDC for the Southern District granted, and 11th Circuit Court affirmed, summary judgment as a matter of law in favor of the insurer on late notice prejudice because it was undisputed that the insurance company was unable to investigate prior to repairs being made

5

by the insured); *XL Ins. Am., Inc. v. Ortiz*, 673 F. Supp. 2d 1331, 1346 (S.D. Fla. Nov. 6, 2009) (ruling Insurer not required to defend Insured in any lawsuit against it because Insured's failure to notify the Insurer of the lawsuit deprived the Insurer the opportunity to decide for itself whether the policy covered the injuries alleged in the incidents, settle the claims, and/or defend Insured (if necessary) in the lawsuit).

VISION did not notify MT. HAWLEY of the occurrences as soon as practicable. A reasonably prudent person would have believed that there was an "occurrence" when Deakin and Azrad were injured by employees of VISION. Instead, VISION did not notify MT. HAWLEY at all. Rather, it found out from other persons months later that the claims were already in suit.

Because of VISION's late notice, MT. HAWLEY is entitled to a presumption of prejudice. As VISION correctly states, the law in Florida requires that the burden then shift to the insured to show that the insurer was not prejudiced. See *Tiedtke v. Fidelity & Casualty Company of New York*, 222 So. 2d 206, 209 (Fla. 1969) (finding that insured had rebutted the presumption of prejudice at trial because record made it "clear…that the purposes of the notice requirement were fully satisfied.")

However, VISION tries to avoid its burden by stating that MT. HAWLEY "cannot articulate any prejudicial effect of the alleged late notice." Notwithstanding the falsity of that statement and lack of any admissible evidence submitted by VISION, it is not MT. HAWLEY's legal burden to do so. See *Slominski v. Citizens Prop. Ins. Corp.*, 99 So. 3d 973, 976 (Fla. 4th DCA 2012) (the insurer will not have the burden of proving prejudice). The law requires VISION to rebut the presumption by showing MT. HAWLEY was not prejudiced.

VISION has not done that. In fact, VISION does not even attempt to present any admissible evidence to rebut the presumption in support of its cross motion for summary judgment. Instead, VISION merely states that because MT. HAWLEY had other grounds to deny the claims,

6

it was not prejudiced. In support, VISION mistakenly relies on *Keenan Hopkins Schmidt & Stowell Contrs., Inc. v. Cont'l Cas. Co.*, 653 F. Supp. 2d 1255, 1262 (M.D. Fla. Sept. 1, 2009). The ruling in *Keenan* relied on *Nationwide Mut. Fire Ins. Co. v. Beville*, 825 So. 2d 999, 1004 (Fla. 4th DCA 2002) which only ruled in favor of the insured on the issue of waiver for defect in the notice provision as it related to defense costs prior to notice of suit (as liability for payment of defense costs after notice was provided was not disputed).

Importantly, the facts of the case at bar are distinguishable from *Keenan*. In *Keenan*, the insurer had not expressly denied the claim due to late notice; instead, it rejected coverage on exclusions in the policy after investigation occurred such that it was sufficient to permit it to deny the claim on those other grounds. *Keenan*, 653 F. Supp. 2d at 1262. See, e.g., *PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 2013 U.S. Dist. LEXIS 200215, *12 (S.D. Fla. April 26, 2013) (rejecting insured's cases as to late notice because "*Keenan* differs from the present action, because the denial of coverage in *Keenan* was not premised upon the late notice. Here, while [insurer] did offer other grounds for denial, [insurer] also stated in its denial of coverage letter that the late notice was grounds for denial of coverage.")

Regarding Deakin, MT. HAWLEY has not formally denied the claim; it has provided VISION with a defense under a complete Reservation of Rights. It has since sought a declaratory judgment ruling from this court as to its duty to defend and duty to indemnify in the Deakin Action for bases other than late notice, as reflected in its Second Amended Complaint for declaratory relief and its Motion for Summary Judgment. However, MT. HAWLEY has not issued a "denial" regarding the Deakin Action.

Regarding the Azrad Action, the facts also are distinguishable from *Keenan*, which make it unpersuasive in the instant case. MT. HAWLEY determined there were several provisions of the Policy that constituted a basis for exclusion of coverage, and one of those was late notice. If an

7

insurer includes late notice as one of the reasons for denial, in addition to other exclusions, it does not waive late notice as a coverage defense. See, e.g., *Wheeler's Moving & Storage, Inc. v. Markel Ins. Co.*, 2012 U.S. Dist. LEXIS 125726, *24 (S.D. Fla. Sept. 4, 2012) (re: insured's citation to *Keenan*, "[t]he Court rejects [insured's] argument that because [insurer] cited the auto exclusion, in addition to late notice, as a reason for denying coverage, [insurer] waived the defense of late notice.") As a result, VISION's reliance on *Keenan* is misplaced.

VISION did not provide timely notice, and thus prejudice to MT. HAWLEY is presumed. VISION's misleading facts, unpersuasive case law, and failure to rebut the presumption preclude summary judgment in its favor on the issue of late notice.

**B. VISION'S CROSS MOTION FOR SUMMARY JUDGMENT AS TO THE NARROW ISSUE OF WHETHER MT. HAWLEY HAS A DUTY TO DEFEND FAILS**

In the Conclusion of VISION's Response to MT. HAWLEY's Motion for Summary Judgment and Incorporated Cross Motion for Summary Judgment [DE 87] (on the last page), VISION asserts for the first time that it is moving for summary judgment as to the narrow issue of whether MT. HAWLEY has a duty to defend in both the Deakin Action and the Azrad Action. MT. HAWLEY refuted those arguments in its Reply to VISION's Response [DE 91] filed on March 11, 2019. MT. HAWLEY incorporates by reference its Reply in full, but directs the Court to certain portions of its argument on this narrow issue.

**a. VISION repeatedly misstates the facts regarding the type of business Bodega is engaged in, in a failed attempt to avoid the Policy Exclusion**

VISION makes an obvious, but failed, attempt to re-characterize the type of business Bodega is in, in order to avoid the Policy's exclusion, by misquoting the words used in the underlying Complaints, adding language that is NOT in the Policy, attempting to eliminate the real meaning behind those words, and covering up the actual type of business Bodega runs.

8

Throughout its Response in Opposition, VISION repeatedly misquotes the specific words used in the underlying Complaints. Specifically, to make its argument that neither Complaint alleges terms that fall within the Specific Work Exclusion, VISION erroneously and misleadingly claims that the Azrad[4] Complaint refers to Bodega as a "restaurant" and the Deakin Complaint refers to Bodega as a "club." (See Response [DE 86], page 4, second to last paragraph.)

However, when each Complaint is viewed as a whole, the evidence is overwhelming that VISION's characterization is misleading at best and just plain wrong at worse. In the Deakin Complaint, Deakin's first reference to Bodega is as a "club." (*See* Deakin Complaint at ¶ 12, attached as exhibit B to Exhibit C to MT. HAWLEY's Motion for Summary Judgment [DE 69].) The next three paragraphs illuminate the meaning of the word "club" by providing context in describing the personnel who worked there and allegedly caused his injuries as "bouncers/security personnel" (¶¶ 13, 14, 15). **Not once does Deakin ever refer to Bodega as a restaurant or any other type of establishment**. Similarly, in the Azrad Complaint, his first reference to Bodega is as a "**bar/nightclub**" where the incident occurred. (*See* Azrad Complaint at ¶ 3, attached as Exhibit D to MT. HAWLEY's Motion for Summary Judgment [DE 69].) Azrad also refers to Bodega throughout the Complaint as a "**restaurant/nightclub**" (¶¶ 4, 5, 6, 7), a "**nightclub**" (¶¶ 12, 13), and a "**restaurant/bar**" (¶¶ 24, 32, 40). **Not once does Azrad ever refer to Bodega merely as a restaurant (much less a hotel or motel**)[5]. Azrad refers to the persons he alleges are responsible for his injuries as a "bouncer/security person" (¶ 9), further providing context for the words used in these allegations.

VISION further tries to confuse the Court by injecting language into the Policy by using the phrase "stand-alone" before the words bar and nightclub. The qualifier of "stand-alone" does

---

[4] MT. HAWLEY has been advised that VISION has settled the lawsuit filed by Azrad.
[5] As reflected in MT. HAWLEY's previous filings, VISION represented in its application for insurance that 100% of its business was providing security services for hotel/motels.

not exist in the Policy. VISION even goes so far as claiming that "neither the Azrad Complaint nor the Deakin Complaint allege Bodega was a nightclub." [DE 86, page 9 of 22.] However, in looking at the Complaints themselves, as described above, that is clearly false.

b. **The terms in the Policy Exclusion are unambiguous and should be interpreted *in pari material***

The entire provision cited in MT. HAWLEY's exclusion states as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY**

**EXCLUSION – SPECIFIC WORK**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2. Exclusions** of **COVERAGE B PERSONAL AND ADVERTISING INJURY** (Section I – Coverages)

**Specific Work**

This insurance does not apply to "bodily injury," "property damage" or "personal advertising injury" arising out of the specific work listed in the **Schedule** below, regardless of whether such specific work is conducted by you or on your behalf or whether the specific work is conducted for yourself or for others.

This exclusion also applies even if other causes contribute to or aggravate the "bodily injury," "property damage" or "personal advertising injury."

**SCHEDULE**

**Description Of Specific Work:**

Any and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs.

\* \* \*

*See Policy* at Form SGL 312 (10/12).

VISION's misrepresentative characterization of Bodega is solely meant to lead the Court astray into believing it's version of the allegations or that there is an issue of fact. Neither could be further from the truth. Azrad uses only the following words/phrases to describe Bodega - "**bar/nightclub**," "**restaurant/nightclub**," "**nightclub**," and "**restaurant/bar**." Deakin refers to

it as a "**Club**." They both describe the persons responsible for their injuries as bouncers, a commonly used term for security personnel at a bar, nightclub, lounge, or gentleman's club.

Courts are required to construe policies in their entirety in order to give each provision it full meaning and operative effect. *Evanston Ins. Co. v. Gaddis Corp.*, 145 F. Supp. 3d 1140, 1146 (S.D. Fla. September 1, 2015); *State Farm Fire & Cas. Co. v. Steinberg*, 393 F. 3d 1226, 1230 (11th Cir. 2004). "A court's inquiry begins with 'the plain language of the policy, as bargained for by the parties.'" *Gaddis*, 145 F. Supp. 3d at 1146 (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). See also, *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) ("[The] terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties."

There can be no doubt from the allegations in the Complaints that Bodega is the type of establishment, "bars, taverns, lounges, gentlemen's clubs and nightclubs," described in the Policy's Exclusion – Specific Work. There is no ambiguity in the words used in the Policy and an insurer is not required to incorporate every conceivable word or synonym to describe the exclusion. See *Vantage Dev. Corp. v. Am. Env't Techs. Corp.*, 251 N.J. Super. 516, 529, 598 A. 2d 948, 955 (N.J. Super. Ct. 1991) ("While there may well be a host of synonyms which could have been added to the exclusion [], a failure to convert an insurance policy into a veritable thesaurus cannot serve to create ambiguity where none exists.")

Contrary to well settled law regarding policy interpretation, VISION complains that this Policy does not qualify the words bars, nightclubs, or lounges by adding the term, "areas" in the exclusion or by adding definitions for commonly understood words.

However, the only reasonable, practical and sensible interpretation of the Policy is that Bodega, as described in the allegations in the Complaints (and in VISION's Response) is precisely

the type of establishment described in the Schedule of the Policy's Exclusion – Specific Work. Specifically, in the Second Amended Complaint filed in the Deakin Complaint,

12. At all relevant times. Bodega operated a club at 1221 16th Street, in Miami Beach (the "Club").
13. Bodega employs/engages bouncers/security personnel for the Club.
14. Vision provided bouncers/security personnel for Bodega.

\*\*\*

16. At all relevant times, the Security Guards were working for Vision at Bodega.
17. At all relevant times, the Security Guards were under the direct supervision and control of Bodega and Vision.
18. During the early morning of November 26, 2016, Deakin was a patron and business invitee at the Club.
19. While Deakin was inside the Club, the Security Guards, without provocation from Deakin, attacked Deakin, knocking him to the ground, punching and kicking him several times, causing him to suffer significant physical injury, including a fractured nose.

As demonstrated by the plain and express allegations contained within the four corners of Deakin and Azrad Complaints, the Complaints do not create the potential for coverage under the Policy; instead, they clearly demonstrate and confirm the basis for the exclusion.

### c. VISION's attempt to re-define the plain meaning of "operations" fails

VISION then attempts to take the word "operations" out of context from the Policy's provision and re-define it to mean VISION would have to be the operator of the bar, tavern, lounge, gentlemen's club and nightclub, in order for the exclusion to apply. But, per the case law cited in both MT. HAWLEY's Motion and VISION's Response, a word or a clause in an exclusion should not be read in absolute isolation, but instead "[a]n insurance policy's provisions 'should be read *in pari material*.'" *Gaddis*, 145 F. Supp. 3d at 1148.

The Policy states that the insurance does not apply to "bodily injury" <u>arising out of</u> the specific work listed in the Schedule, <u>regardless of whether such specific work is conducted by you or on your behalf or whether the specific work is conducted for yourself or for others</u>. The Schedule

is a <u>description</u> of the specific work, and included as one of many categories or types is, "Any and all operations <u>involving</u> bars, taverns, lounges, gentlemen's clubs and nightclubs." (emphasis added)

The Florida Supreme Court has ruled the phrase "arising out of" in insurance policy exclusions is unambiguous and should be interpreted broadly. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528 (Fla. 2005). The Court explained that the term "arising out of" is broader in meaning than the term "caused by" and means "originating from," "having its origin in," "growing out of," "flowing from," "incident to" or "having a connection with." *Id.*

Unquestionably, the word "operations" speaks to VISION's work, and the Policy provides whether it is conducted "for yourself" – as in an operator of those types of establishments – OR "for others" – as in, for Bodega, as alleged. The words following the phrase "**Description Of Specific Work:**" provides that VISION's operations, or work, is excluded if it **involves** bars, taverns, lounges, gentlemen's clubs and nightclubs, which is exactly what is alleged in the Complaints. Coverage does not apply to "bodily injury" arising out of any operations of VISION involving bars, taverns, lounges, gentlemen's clubs and nightclubs. As reflected in MT. HAWLEY's Motion for Summary Judgment, in order to secure the subject insurance policy, VISION completed the General Liability Insurance Application for Security Guard and Detective/Private Investigators (the "Application") in which VISION was presented the following question: "Please provide percentage breakdown for all security guard and armored car operations below:" To this question, VISION answered:

100% of all security guard operations were for "Hotels/Motels."

It is undisputed that BODEGA is *not* a hotel or motel and that BODEGA is a "Bar/Nightclub/Tavern."

As the courts have ruled, "[w]here the allegations in the complaint show that no coverage exists or a policy exclusion applies, no duty to defend arises." *James River Ins. Co. v. Bodywell Nutrition, LLC*, 842 F. Supp. 2d 1351, 1354 (S.D. Fla. 2012) (citing *Posigian v. Am. Reliance Ins. Co. of N.J.*, 549 So. 2d 751, 753 (Fla. 3d DCA 1989)).

In determining MT. HAWLEY's duty to defend VISION and its employees in the Deakin Action and Azrad Action, this Court is bound to the four corners of both actions and the four corners of the Policy. It is undisputed that the claims made in the Deakin Action and Azrad Action arise out of "bodily injury" to Deakin and Azrad allegedly caused by employees of VISION while providing security/bouncer services at and for Bodega, a "bar" and/or "nightclub." As such, these bodily injury claims in the Deakin Action and Azrad action arose out of VISION and/or its employee's operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs. Therefore, MT. HAWLEY has no duty to defend VISION and its employees in the Deakin Action and Azrad Action.

Consequently, there is no coverage afforded to VISION and its employees for any sums they become liable for in the Deakin Action and Azrad Action because of "bodily injury" arising out of any and all operations involving bars, taverns, lounges, gentlemen's clubs and nightclubs.

As provided in MT. HAWLEY's Motion for Summary Judgment and herein, the allegations of the Complaints are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation. Thus, MT. HAWLEY's Motion for Final Summary Judgment should be granted, and VISION's Cross Motion for Summary Judgment on the narrow issue of whether MT. HAWLEY has a duty to defend should be denied.

C. **CONCLUSION**

VISION's Cross Motion for Summary Judgment, as incorporated into its Response in Opposition to MT. HAWLEY's Motion for Summary Judgment, fails both factually and legally.

As to the issue of late notice, it is undisputed that VISION did not provide timely notice, and thus prejudice to MT. HAWLEY is presumed. VISION's misleading facts, failure to present the Court with any admissible evidence, unpersuasive case law, and failure to rebut the presumption preclude summary judgment on the issue of late notice in its favor.

Likewise, as to VISION's Cross Motion for Summary Judgment as to the narrow issue of whether MT. HAWLEY has a duty to defend, there are no genuine issues of material fact that VISION's argument fails and MT. HAWLEY is entitled to summary judgment as a matter of law that it has no duty to defend the Respondents to this action for any claims asserted against them in the Deakin Action and the Azrad Action.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C.**

| | | |
|---|---|---|
| By | : | /s/ Michael A. Packer<br>Michael A. Packer<br>Florida Bar No.: 121479 |
| Primary | : | mapacker@mdwcg.com<br>Mary E. Corbin<br>Florida Bar No.: 84101 |
| Primary | : | mecorbin@mdwcg.com<br>100 NE 3rd Avenue, Suite 1100<br>Fort Lauderdale, FL 33301<br>Phone: (954) 847-4920 |
| Secondary | : | mspenela@mdwcg.com<br>acdechane@mdwcg.com<br>pleadingsftl@mdwcg.com |
| Attorneys for | | *MT. HAWLEY INSURANCE COMPANY* |

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true copy of the foregoing **Response in Opposition to Vision's Cross Motion for Summary Judgment** was electronically filed via CM/ECF this 18th day of March, 2019, to all parties of record.

/s/ Michael A. Packer
Michael A. Packer